

1  STEVEN E. YOUNG (BAR NO. 63278)
   SEY@FFSLAW.COM
2  ROBERT J. GIRARD, II (BAR NO. 216949)
   RJG@FFSLAW.COM
3  FREEMAN, FREEMAN & SMILEY, LLP
   Suite 1200
4  3415 South Sepulveda Boulevard
   Los Angeles, California 90034
5  Telephone: (310) 255-6100
   Facsimile: (310) 391-4042
6
   Attorneys for Plaintiff
7  LIB-MP BEVERAGE, LLC

**FILED**
CLERK, U.S. DISTRICT COURT

**MAR 25 2010**

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 | LIB-MP BEVERAGE, LLC, a California       Case No. **CV10 2184 VBF (JCx)**
     limited liability company,
12
              Plaintiff,                      **COMPLAINT FOR RELIEF:**
13
      v.                                      **(1)  FRAUD (PROMISE MADE
14                                                  WITHOUT INTENT TO
   PLAY BEVERAGES, LLC, a Delaware                  PERFORM);**
15 limited liability company; CIRTRAN       **(2)  SPECIFIC PERFORMANCE;**
   BEVERAGE CORPORATION, a Utah            **(3)  BREACH OF CONTRACT;**
16 Corporation; CIRTRAN                    **(4)  BREACH OF THE
   CORPORATION, a Utah Corporation;              COVENANT OF GOOD
17 IEHAB HAWATMEH, an Individual;                FAITH AND FAIR
   FADI NORA, an Individual, and DOES 1         DEALING;**
18 through 10, inclusive,                   **(5)  DECLARATORY RELIEF;**
                                            **(6)  ACCOUNTING,
19            Defendants.                         IMPOSITION OF
                                                  CONSTRUCTIVE TRUST;
20                                                AND APPOINTMENT OF
                                                  RECEIVER**
21
                                            **DEMAND FOR JURY TRIAL**
22

23

24

25

26

27

28

_____
                  COMPLAINT FOR RELIEF:

FREEMAN, FREEMAN & SMILEY, LLP
SUITE 1200
3415 SOUTH SEPULVEDA BOULEVARD
LOS ANGELES, CA 90034-6060
(310) 255-6100

1035321.2
22034-800

## I.   **JURISDICTION AND VENUE**

1.   This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332 in that there is diversity of citizenship between the Defendants and the Plaintiff, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2.   Venue is proper in this district pursuant to 28 U.S.C. §1391, because the Royalty Agreement that is the subject of this action was entered into in the County of Los Angeles, State of California, and provides that any lawsuit is governed by the laws of the State of California.

## II.   **THE PARTIES**

3.   Plaintiff LIB-MP Beverage, LLC ("LIB") is, and all times relevant herein was, is a limited liability company organized and existing under and by virtue of the laws of California, with its principal place of business in the County of Los Angeles, State of California.

4.   Plaintiff is informed and believes, and based thereon alleges that Defendant Play Beverages, LLC ("PlayBev") is a limited liability company organized and existing under and by virtue of the laws of Delaware, with its principal place of business in West Valley City, Utah, and doing business within and outside the County of Los Angeles, State of California.

5.   Plaintiff is informed and believes, and based thereon alleges that Defendant CirTran Corporation ("Cirtran") is a corporation organized and existing under and by virtue of the laws of Utah, with its principal place of business in West Valley City, Utah, and doing business within and outside the County of Los Angeles, State of California.

6.   Plaintiff is informed and believes, and based thereon alleges that Defendant CirTran Beverage Corporation ("CBC") is a corporation organized and existing under and by virtue of the laws of Utah, with its principal place of business

COMPLAINT FOR RELIEF:

1035321.2
22034-800

1  in West Valley City, Utah, and doing business within and outside the County of Los

2  Angeles, State of California.

3          7.      Plaintiff is informed and believes, and based thereon alleges that CBC

4  and Cirtran Corporation are affiliated with PlayBev as parents, subsidiaries, co-

5  venturers or otherwise, the specifics of which are not yet known to Plaintiff.  When

6  the true and precise nature of their relationship is ascertained, Plaintiff will seek

7  leave of Court to Amend this complaint accordingly.

8          8.      Plaintiff is informed and believes, and based thereon alleges that

9  Defendant Iehab Hawatmeh ("Hawatmeh") is an individual residing in West Valley

10  City in the State of Utah.

11          9.      Plaintiff is informed and believes, and based thereon alleges that

12  Defendant Fadi Nora ("Nora") is an individual residing in the County of Orange,

13  State of California.

14          10.     Plaintiff is informed and believes and thereupon alleges that at all

15  relevant times herein, Cirtran, CBC and PlayBev were dominated and controlled by

16  Hawatmeh and/or Nora.  Plaintiff is further informed and believes and thereupon

17  alleges that at all times relevant herein there existed a unity of interest between

18  Cirtran, CBC and PlayBev and Hawatmeh and/or Nora, such that the individuality

19  and separateness of such Defendants have ceased, if it ever existed, and that

20  Hawatmeh and/or Nora are the alter egos of Cirtran, CBC and PlayBev.  Plaintiff is

21  further informed and believes and thereupon alleges that Hawatmeh and/or Nora

22  dominated and controlled the business affairs of Cirtran, CBC and PlayBev, caused

23  or allowed Cirtran, CBC and PlayBev to be undercapitalized, and commingled

24  and/or dominated and controlled the assets of Cirtran, CBC and PlayBev and treated

25  same as Hawatmeh's and/or Nora's own.  As a result, adherence to the fiction of a

26  separate existence between such Defendants would sanction fraud and promote

27  injustice in that Cirtran, CBC and PlayBev are mere shells, instrumentalities, and/or

28

2

COMPLAINT FOR RELIEF:

1035321.2
22034-800

1 │ conduits through which Hawatmeh and/or Nora carried out their business affairs with

2 │ Plaintiff.

3 │     11.    The true names and capacities, whether individual, corporate, associate

4 │ or otherwise, of those defendants named herein as Does 1 through 10, inclusive, are

5 │ presently unknown to Plaintiff, which therefore sues said defendants by such

6 │ fictitious names.  Plaintiff is informed and believes, and based thereon alleges, that

7 │ each such defendant participated in the acts complained of herein or otherwise is

8 │ liable therefore, and that Plaintiff's damages as alleged herein were directly and

9 │ proximately caused by the acts of each such defendants.  When the true names and

10 │ capacities of said defendants are ascertained, Plaintiff will seek leave of Court to

11 │ amend this complaint accordingly.

12 │     12.    Plaintiff is informed and believes and thereupon alleges that at all times

13 │ relevant herein, each of the Doe Defendants and each of the named Defendants were

14 │ the agents and/or employees of one or more of the other Defendants, were acting

15 │ within the course and scope of said agency and/or employment, and that each

16 │ Defendant has aided and assisted one or more of the other Defendants in committing

17 │ the wrongful acts herein alleged.  Plaintiff is informed and believes and thereupon

18 │ alleges that Defendants, and each of them, conspired and agreed among themselves

19 │ to do the acts complained of herein and were, in doing the acts complained of herein,

20 │ acting pursuant to said conspiracy, and that each Defendant sued herein is jointly and

21 │ severally responsible and liable to Plaintiff for the damages alleged herein.

22 │     13.    Whenever appearing in this complaint, each and every reference to

23 │ "Defendant(s)" is intended to be, and shall be deemed, a reference to all defendants

24 │ in this action, and each of them, named and unnamed, including all fictitiously

25 │ named defendants.

26 │ **III.   ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

27 │     14.    LIB owned and controlled a 21.125% membership interest in PlayBev

28 │ from February 2007 to August 2008 (hereinafter the "LIB Interest").

COMPLAINT FOR RELIEF:

1035321.2
22034-800

15. Plaintiff is informed and believes and thereupon alleges that, sometime prior to August of 2008, PlayBev obtained a license agreement from Playboy Enterprises, Inc. ("Playboy"), permitting PlayBev to use the Playboy and "rabbit head" logo on non-alcoholic energy drinks and flavored water beverages (hereinafter the "Products").

16. A third party, American Sales & Merchandising, LLC ("ASM") had an exclusive distribution agreement with PlayBev for all domestic and international territories.

17. PlayBev desired to eliminate the ownership interest of Plaintiff and the exclusive distribution agreement of ASM, and requested that Plaintiff exchange its beneficial 21.1175% ownership interest in PlayBev for a 7% royalty and that ASM cancel its exclusive distributorship rights in exchange for an additional royalty to ASM.

18. In or around August of 2008, PlayBev and LIB entered into a Royalty Agreement, whereby LIB surrendered the LIB Interest in PlayBev in exchange for PlayBev's grant to LIB of a royalty on certain revenue from the Products (hereinafter "Royalty Agreement"). A true and correct copy of the Royalty Agreement is attached hereto as **Exhibit 1** and incorporated herein by this reference.

19. The Royalty Agreement is a written, valid and enforceable contract between LIB and PlayBev.

20. In exchange for the surrender of the LIB Interest in PlayBev, PlayBev agreed to pay LIB as follows:

      (i)   7% of the gross sales by or on behalf of PlayBev of all of the Products; and

      (ii)  7% of any distributor fees or sub-license fees received by or on behalf of PlayBev and attributed to the sale of the Products (hereinafter the "Royalty Payments").

COMPLAINT FOR RELIEF:

1035321.2
22034-800

21.     Under the Royalty Agreement, the Royalty Payments were deemed to be necessary expenses incurred in the ordinary course of PlayBev's business.

22.     Pursuant to Sections 4 (a) and (b) of the Royalty Agreement, PlayBev was to provide periodic reports to LIB and associated Royalty Payments as follows:

    (i)     for international sales and distribution, by the 15th day of each calendar month; and

    (ii)     for domestic sales and distribution on a quarterly basis prior September 20, 2009, within 45 days of the close of each calendar quarter.

    (iii)     for domestic sales and distribution on a monthly basis after September 20, 2009, within 15 days of the close of each calendar month.

23.     Pursuant to Section 9 (a) of the Royalty Agreement, all outstanding Royalty Payments will commence accruing interest at a rate of 1% per month, and PlayBev is prohibited from rendering any distributions or payments to members, managers or further allocations of funds received by CBC (or any other entity) on behalf of PlayBev for loan repayments (including payments to Cirtran), distributions or any other type of transfer other than in the ordinary course of business for trade.

24.     Pursuant to Section 9 (d) of the Royalty Agreement, in the event of an uncured default, PlayBev is required to immediately issue 21,175 Class A Units to Plaintiff as its Springing Interest.

25.     Although the face of the Royalty Agreement states that it is between Plaintiff, on the one hand, and PlayBev and CBC on the other hand, Plaintiff is informed and believes, and based thereon alleges that PlayBev and CBC are subsidiaries of CirTran, and CirTran is liable for all of the obligations in the Royalty Agreement.

COMPLAINT FOR RELIEF:

1035321.2
22034-800

26. As of January 2009, PlayBev has submitted incomplete and inaccurate Reports and failed to make any Royalty Payments to LIB, in contravention of the Royalty Agreement.

27. As of January 2009, PlayBev defaulted under the terms of the Royalty Agreement in several respects, including but not limited to, failing to provide the requisite Reports and Royalty Payments to LIB and ignoring LIB's multiple attempts to rectify the default.

28. Pursuant to Section 9 (a) of the Royalty Agreement, on January 15, 2009, LIB, through its counsel, MetLawGroup, sent written notice of default to PlayBev with a copy to its counsel, as required by the Royalty Agreement. A true copy of the January 15, 2009 letter ( "1st Notice of Default") is attached hereto as **Exhibit 2**, and incorporated herein by this reference.

29. The 1st Notice of Default explicitly stated that PlayBev had failed to provide the requisite Reports or Royalty Payments for any international sales and distribution for the months of September 2008 through December 2008, and any domestic sales for the third quarter of the 2008 calendar year.

30. In addition, the 1st Notice of Default notified PlayBev that, pursuant to Section 9 of the Royalty Agreement, PlayBev was prohibited from making any distributions or payments to members, managers or other disbursements from PlayBev to CirTran, and that all outstanding Royalty Payments will commence accruing interest at a rate of 1% per month.

31. In response, Defendants, through their counsel, acknowledged the 1st Notice of Default but failed to cure the defaults. Specifically, Defendants fraudulently mischaracterized the funds received by PlayBev as "deposits," rather than reported sales for which Royalty Payments would be due and owing to Plaintiff, notwithstanding the fact that such monies were being used to pay down Defendants' debts and obligations. As such, Defendants refused to cure the defaults.

COMPLAINT FOR RELIEF:

1035321.2
22034-800

1    32.    On or about January 23, 2009, as a result of Defendant's continuing

2    failure and refusal to cure the defaults and its attempt to mischaracterize the reported

3    sales and Royalty Payments due to Plaintiff, Plaintiff demanded full access to the

4    books and records of PlayBev, pursuant to Section 10 of the Royalty Agreement.

5    33.    In continued breach of the Royalty Agreement, Defendants granted

6    Plaintiff only partial access to the books and records of PlayBev.  Although Plaintiff

7    was unable to perform a thorough audit, it was clear that PlayBev was co-mingling

8    the funds of PlayBev with CBC and CirTran, including such funds that constituted

9    Royalty Payments due and owing to Plaintiff.

10    34.    On February 13, 2009, LIB, through its counsel, MetLawGroup, sent a

11    second written notice of default to PlayBev, with a duplicate letter sent to

12    Defendants' counsel on the same date.  A true copy of the February 13, 2009 letter (

13    "2nd Notice of Default") is attached hereto as **Exhibit 3**, and incorporated herein by

14    this reference.

15    35.    The 2nd Notice of Default explicitly reserved LIB's rights under the 1st

16    Notice of Default, which defaults had yet to be cured by PlayBev, and notified

17    PlayBev that, in addition to its other breaches of the Royalty Agreement, it had failed

18    to make appropriate payments under certain Promissory Notes, and that it was

19    prohibited from making any distributions or payments to members, managers or

20    further allocations of funds received by CBC (or any other entity) on behalf of

21    PlayBev for loan repayments, including payments to CirTran.

22    36.    The 2nd Notice of Default reiterated that, pursuant to Section 9 of the

23    Royalty Agreement, PlayBev was prohibited from making any distributions or

24    payments to members, managers or other disbursements from PlayBev to CirTran.

25    See **Exhibit 3**.  The 2nd Notice of Default specifically stated:

26    　　　　Any previous or future transfer in contravention of this directive

27    　　　　shall be considered fraudulent and we will be taking action

28    　　　　against the involved parties accordingly.  Notwithstanding this,

1         we reserve our rights pertaining to your accounting of PlayBev

2         funds and co-mingling of assets by [CirTran].

3      37.    On February 18, 2009, LIB, through its counsel, sent a third written

4 notice of default to PlayBev, with a duplicate letter sent to its counsel on the same

5 date. A true copy of the February 18, 2009 letter ("3rd Notice of Default") is attached

6 hereto as **Exhibit 4,** and incorporated herein by this reference.

7      38.    The 3rd Notice of Default alerted PlayBev that it was, again, in default

8 per the provisions of Sections 4 (a) and (b) of the Royalty Agreement, by submitting

9 late and incomplete Reports and failing to make the required Royalty Payments to

10 LIB for the month of January 2009, despite the fact the PlayBev had received

11 international distribution fees for that month. See **Exhibit 4.** The 3rd Notice of

12 Default yet again stated that PlayBev's violation of Section 9 of the Royalty

13 Agreement, e.g., the illicit transfer of funds, is prohibited conduct and that LIB will

14 consider any willful act in contravention thereto an act of fraud. The 3rd Notice of

15 Default also gave PlayBev notice that LIB had concerns regarding the improprieties

16 of co-mingling funds in addition to the illicit transfers of funds.

17      39.    The 3rd Notice of Default demanded that PlayBev cure the defaults and

18 remit the owed monies to LIB by no later than February 20, 2009.

19      40.    PlayBev did not cure the defaults noticed in any of the three (3) prior

20 Notices of Default sent by LIB-MP.

21      41.    In or around March, 2009, PlayBev finally provided a financial

22 statement reflecting that it owed Plaintiff Royalty Payments in excess of $24,000 for

23 the gross sales by or on behalf of PlayBev of all Products in 2008. Defendants,

24 however, paid Plaintiff only $2,021.72.

25      42.    On September 15, 2009, LIB made formal written demand to PlayBev,

26 pursuant to Section 9 of the Royalty Agreement, to issue and transfer 21,175 Class A

27 Units as Springing Interest (hereinafter the "Springing Interest") as a result of

28

COMPLAINT FOR RELIEF:

1   PlayBev's continued and uncured defaults.  Such issuance of stock was a specified

2   "Event of Default" under the Royalty Agreement.

3       43.    The same September 15, 2009 letter also served as notice to PlayBev

4   that it was again in breach of Sections 4(a) and (b) of the Royalty Agreement for

5   failure to pay LIB Royalty Payments for international revenues from March 2009

6   through August 2009, and domestic revenues from March 2009 through June 2009.

7   A true copy of the September 15, 2009 letter ("4th Notice of Default") is attached

8   hereto as **Exhibit 5**, and incorporated herein by this reference.

9       44.    The 4th Notice of Default also alerted PlayBev to the fact that the co-

10   mingling and "sweeping" of PlayBev's and CirTran's funds constituted criminal

11   activity, including but not limited to, embezzlement and conversion of PlayBev's

12   assets.

13       45.    The 4th Notice of Default demanded that PlayBev issue the Class A

14   Units as required under the Royalty Agreement, cure the defaults and remit the owed

15   monies to LIB-MP by no later than September 21, 2009.

16       46.    PlayBev made no effort to comply with LIB's 4th Notice of Default.

17       47.    On October 21, 2009, LIB made another formal written demand to

18   PlayBev, pursuant to Section 9 of the Royalty Agreement, to issue 21,175 Class A

19   Units (Springing Interest), as a result of PlayBev's continued and uncured defaults

20   and included notice to PlayBev of the summary of defaults regarding the payment of

21   royalties to LIB, which spanned from August 2008 through September 2009.  A true

22   copy of the October 21, 2009 letter ("5th Notice of Default") is attached hereto as

23   **Exhibit 6.**

24       48.    The 5th Notice of Default demanded that PlayBev issue the Springing

25   Interest Class A Units as required under the Royalty Agreement, cure the multitude

26   of PlayBev's other defaults and remit the owed monies to LIB by no later than

27   October 23, 2009.

28       49.    PlayBev made no effort to comply with LIB's 5th Notice of Default.

COMPLAINT FOR RELIEF:

50.     On March 17, 2010, LIB made another formal written demand to PlayBev, pursuant to Section 9 of the Royalty Agreement, to issue 21,175 Class A Units (Springing Interest), as a result of PlayBev's continued and uncurred defaults, and included notice to PlayBev of the summary of defaults regarding the payment of royalties to LIB, which spanned from August 2008 through February 2010.  A true copy of the March 17, 2010 letter ("6th Notice of Default") is attached hereto as **Exhibit 7** and incorporated herein by this reference as though fully set forth.

51.     The 6th Notice of Default demanded that PlayBev issue the Springing Interest Class A Units as required under the Royalty Agreement, cure the multitude of PlayBev's other defaults, and remit the monies owed to LIB by no later than March 19, 2010.

52.     PlayBev made no effort to comply with LIB's 6th Notice of Default.

53.     In addition, subsequent to the execution of the Royalty Agreement, Plaintiff learned that, in or around June 2008, Defendants entered into a secret oral agreement with Jimmy Esebag ("Esebag"), the licensing broker, whereby Defendants promised Esebag $1,000,000 if he could convince Plaintiff and ASM to exchange their respective LIB Interest and exclusive distribution agreement for royalty payments, which he ultimately did.  At no time, prior to or during the negotiation process, did Defendants or Mr. Esebag disclose their secret side agreement to Plaintiff and/or ASM.

54.     Defendants later breached their oral agreement with Mr. Esebag, who subsequently initiated a civil action by filing a complaint for breach of contract, fraud and defamation in Los Angeles Superior Court, entitled, *Jimmy Esebag v. Cirtran Beverage Corp., Fadi Nora, et al.*, California Superior Court, Los Angeles County, BC396162,  a true and correct copy of which is attached hereto as **Exhibit 8.**

COMPLAINT FOR RELIEF:

1035321.2
22034-800

# IV.   CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF AS TO LIB

### (Fraud - Promise Made Without Intent to Perform –

### Against All Defendants)

55.    Plaintiff refers to paragraphs 1 through 54, above and incorporates said paragraphs herein by this reference as though fully set forth.

56.    Plaintiff is informed all believes, and thereon alleges that both at the time  Defendants made the promise and covenants to render accurate Reports and make Royalty Payments as required by Section 4 of the Agreement (See **Exhibit 1**), they had no intention of observing and timely performing the promise and covenant to pay the Royalty Payments to Plaintiff.   In addition, Defendants made the promise to issue the Springing Interest in the event of Default without the intent to do so. Further, Defendants made the promise to provide Plaintiff an inspection and audit and full access to all books and records without the intent to do so.

57.    Their promise and covenant was made by Defendants with the intent to induce Plaintiff to sell the LIB Interest to Defendants, at a favorable price and terms.

58.    At the time this promise and covenant was made and at the time Plaintiff took the actions herein alleged, Plaintiff was ignorant of Defendants secret intentions not to perform said obligations unless they found it to be in their interest to do so at any give time, and Plaintiff could not, in the exercise of reasonable diligence have discovered the Defendants' secret intentions.  In addition, Plaintiff was ignorant of Defendants secret oral agreement with Esebag, who brokered the deal, and was promised $1,000,000, unbeknownst to Plaintiff, if he could convince Plaintiff and ASM to relinquish Plaintiff's LIB Interest and ASM's exclusive distribution agreement.

59.     In reliance thereon, Plaintiff agreed to sell the LIB Interest to Defendants at advantageous terms.  Plaintiff would not have sold the LIB Interest to Defendants had it known of their true intentions,

60.     The aforesaid conduct of Defendants was part of an act of intentional deceit concerning a material fact (their true intentions regarding the non-payment of the Royalty Payments), with the intention of thereby depriving Plaintiff of its property (the LIB Interest), and to otherwise adversely affect Plaintiff's legal rights, and cause Plaintiff to suffer loss and injury, in conscious disregard of Plaintiff's rights and interest, so as to justify an award of punitive and exemplary damages.

## SECOND CLAIM FOR RELIEF

### (Specific Performance - Against All Defendants)

61.     Plaintiff refers to Paragraphs 1 through 60, above and incorporates said paragraphs herein by this reference as though fully set forth.

62.     Plaintiff has performed all covenants and conditions precedent required to be performed on its part pursuant to the Royalty Agreement (**Exhibit 1**), other than as prevented or excused by the conduct of the Defendants herein.  Plaintiff was, at all times, and still is ready, willing and able to perform them, and hereby offers to perform them, pursuant to the terms of the Royalty Agreement.

63.     Defendants have affirmatively failed and refused, and continue to fail and refuse to perform the covenants, conditions and promises of the Royalty Agreement, specifically stating in writing, that they had no intention of making the Royalty Payments, as required by the Royalty Agreement.

64.     For the reasons heretofore stated, Plaintiff has no adequate nor complete remedy at law.

///

///

///

///

12

1035321.2
22034-800

## THIRD CLAIM FOR RELIEF

### (Breach of Written Contract - Against All Defendants)

65.   Plaintiff realleges and reincorporates herein by reference each and every allegation contained in paragraphs 1 through 64, inclusive, hereinabove, as though set forth in full.

66.   Beginning in or about August 2008, and on dates thereafter within the County of Los Angeles, State of California, Plaintiff and Defendants entered into a Royalty

67.   Plaintiff provided the LIB Interest to Defendants, and otherwise complied with all of the terms and conditions of the Royalty Agreement.  Plaintiff has performed all acts, conditions, covenants, promises and other obligations required to be performed by it pursuant to the terms of the Royalty Agreement.

68.   Defendants, and each of them, have breached the Royalty Agreement, by failing and refusing, and continuing to fail and refuse, to pay amounts owed to Plaintiff, and to issue the Springing Interest.

69.   As a result of Defendants' breach of the Royalty Agreement, Plaintiff has been damaged in an amount according to proof at trial, but not less than $100,000.  Plaintiff is seeking all of the costs of collection incurred in this action, including but not limited to attorneys' fees as provided in the Royalty Agreement. Plaintiff is entitled to interest on said sum at the legal rate of ten percent per annum from and after the date upon which said sum first became due and owing, according to proof at trial.

///
///
///
///
///
///

COMPLAINT FOR RELIEF:

1035321.2
22034-800

## FOURTH CLAIM FOR RELIEF

### (For Breach of the Implied Covenant of Good Faith and Fair Dealing –

### Against All Defendants)

70.    Plaintiff realleges and reincorporates herein by reference each and every allegation contained in paragraphs 1 through 69, inclusive, hereinabove, as though set forth in full.

71.    As a result of the express and implied promises made in the Royalty Agreement, Defendants covenanted and promised to act in good faith toward, and to deal fairly with Plaintiff, concerning all matters relating to the Royalty Agreement so as not to deprive Plaintiff of the right to receive the benefit of such Agreement.

72.    Plaintiff relied on the Royalty Agreement  and Defendants' implied covenant not to deprive Plaintiff of its rights thereunder.

73.    Defendant has breached its implied covenants of good faith and fair dealing and as a proximate result Plaintiff has been damaged in an amount to be proved at trial.

## FIFTH CLAIM FOR RELIEF

### (Declaratory Relief - Against All Defendants)

74.    Plaintiff realleges and reincorporates herein by reference each and every allegation contained in paragraphs 1 through 73, inclusive, hereinabove, as though set forth in full.

75.    Plaintiff gave notice to Defendant of its breaches of the Royalty Agreement as described in this Complaint.

76.    A real and present controversy now exists between Plaintiff and Defendants concerning their respective rights and duties in connection with the Royalty Agreement in that Plaintiff contends that Defendants breached the Royalty Agreement and continues to breach the Royalty Agreement as described herein, and specifically, Plaintiff contends that it is entitled to Royalty Payments from September 2008 to the present, and is also entitled to the transfer of 21,175 Class A

14

COMPLAINT FOR RELIEF:

1   Units, whereas LIB is informed and believes and thereon alleges that Defendant

2   contends that it has not breached the Royalty Agreement in any respect, that any

3   monies are due to LIB and/or that LIB is entitled to recover the 21,175 Class A

4   Units, and further denies any and all improprieties regarding the co-mingling and

5   prohibited transfers of funds, that are due and owing to Plaintiff.

6       77.     Plaintiff desires a judicial determination of its rights and duties, and a

7   declaration as to whether Defendant breached the Royalty Agreement , and whether

8   Plaintiff is entitled to, among other things, the issuance and transfer of the Springing

9   Interest, in connection with Defendants' failure to render accurate Reports and make

10  Royalty Payments and the improper transfer and co-mingling of funds that are due

11  and owing to Plaintiff,  as described herein.

12      78.     A judicial declaration by this Court is necessary so that the parties may

13  know their rights and obligations in connection with the Royalty Agreement both

14  retroactively and prospectively.  Plaintiff has no other speedy or adequate remedy at

15  law to resolve these differences.

16                          **SIXTH CLAIM FOR RELIEF**

17                   **(Accounting – Against All Defendants)**

18      79.     Plaintiff realleges and reincorporates herein by reference each and every

19  allegation contained in paragraphs 1 through 78, inclusive, hereinabove, as though

20  set forth in full.

21      80.     As a direct result of Defendants' actions as alleged above, Defendants

22  have received and are in possession of books, assets, accounts, and/or monies which

23  rightfully belong to Plaintiff.  The amount of monies and/or property due to Plaintiff

24  from Defendants is unknown to Plaintiff and cannot be ascertained without an

25  accounting thereof.  Plaintiff has demanded an accounting, but Defendants have

26  failed and/or refused, and continue to fail and/or refuse, to provide the requested

27  information to allow a full accounting.

28

COMPLAINT FOR RELIEF:

1035321.2
22034-800

1   81.   Plaintiff is further entitled to and demands the equitable remedy of an

2   accounting based on Defendants' fraud as alleged herein.  The fraud committed by

3   Defendant in entering into the Royalty Agreement with no intent to perform, was

4   part of an act of intentional deceit concerning a material fact (their true intentions

5   regarding the non-payment of the Royalty Payments) to deprive Plaintiff of its

6   property (the LIB Interest), and to otherwise adversely affect Plaintiff's legal rights.

7   An action for an accounting lies within the jurisdiction of equity where fraud has

8   been committed.

9   82.   Plaintiff has demanded an accounting, but Defendants have failed and/or

10   refused, and continue to fail and/or refuse to provide a complete and accurate

11   accounting and to settle accounts with Plaintiff, and thus a Court ordered accounting

12   is necessary.  In addition, Defendants has repeatedly informed Plaintiff that the funds

13   due to Plaintiff are "security deposits", rather than working capital to which Plaintiff

14   is not entitled, without every showing the validity of such deposits.  Accordingly, an

15   accounting is necessary.

16   83.   Further, a constructive trust for the benefit of Plaintiff should be

17   imposed upon Defendants for the amounts owed to Plaintiff by Defendant under the

18   Royalty Agreement, as alleged herein.

19   84.   In addition, a receiver should be appointed to take possession of the

20   constructive trust, and all books, reports, and records pertaining to the amounts owed

21   to Plaintiff by Defendant under the Royalty Agreement, to protect Plaintiff from

22   Defendants' improper transfer and commingling of funds, as alleged herein.

23

24   **WHEREFORE,** prays judgment against Defendants, and each of them, as

25   follows:

26   ## On The First Cause of Action

27   1.   For general and consequential damages of not less than $100,000,

28   according to proof at the time of trial;

1035321.2
22034-800

1      2.     For an award of punitive and exemplary damages in an amount deemed

2  sufficient to punish the Defendants for their wrongful conduct and by way of

3  example;

4                   **On The Second Cause of Action**

5      1.     That, pursuant to the Royalty Agreement (Exhibit 1), Defendants be

6  ordered to forthwith commence and diligently proceed to make all past and future

7  Royalty Payments.

8             **On The Third and Fourth Causes of Action**

9      2.     For general and consequential damages of not less than $100,000,

10  according to proof at the time trial;

11                 **On the Fifth Cause of Action**

12      1.     For a declaratory judgment that Defendant is in breach of the Royalty

13  Agreement and Plaintiff is entitled to damages, including the issuance and transfer of

14  21,175 Class A Units as a Springing Interest,  as a result of PlayBev's continued and

15  uncured defaults regarding the payment of royalties to LIB-MP, which spanned from

16  August 2008 through September 2009 for Defendant's, as alleged herein and as a

17  result of Defendants' fraud as alleged herein;

18                 **On the Sixth Cause of Action**

19      1.     For an accounting;

20      2.     For payment over to Plaintiff of the amount determined to be due from

21  Defendants as a result of the account and interest on that amount at the legal rate;

22      3.     For the imposition of a constructive trust against Defendants for all

23  sums found due and owing to Plaintiff pursuant to such accounting;

24      4.     For the appointment of a receiver to take possession of the constructive

25  trust, and all books, reports, and records pertaining to the amounts owed to Plaintiff

26  by Defendant.

27

28

COMPLAINT FOR RELIEF:

1035321.2
22034-800

**On All Causes of Action**

1.     For interest on the amounts found due and owing for general and consequential damages;

2.     For reasonable attorneys' fees;

3.     For costs of suit incurred herein; and,

4.     For such other and further relief as the Court deems just and proper.

Dated: March 25, 2010          Respectfully submitted,

STEVEN E. YOUNG
ROBERT J. GIRARD II
FREEMAN, FREEMAN & SMILEY, LLP

By: _____
    STEVEN E. YOUNG
    Attorneys for Plaintiff
    LIB-MP BEVERAGE, LLC

**JURY DEMAND**

Plaintiff hereby requests a trial by jury for all such triable claims.

Dated: March 25, 2010          Respectfully submitted,

STEVEN E. YOUNG
ROBERT J. GIRARD II
FREEMAN, FREEMAN & SMILEY, LLP

By: _____
    STEVEN E. YOUNG
    Attorneys for Plaintiff
    LIB-MP BEVERAGE, LLC

18
COMPLAINT FOR RELIEF:

# EXHIBIT 1

## ROYALTY AGREEMENT

THIS ROYALTY AGREEMENT (the "Agreement") is made and entered into this 23rd day of August, 2008 ("Effective Date") by and between PLAY BEVERAGES, LLC, a Delaware limited liability company ("PlayBev"), CirTran Beverages Corporation, a Utah Corporation ("CBC") and LIB MP BEVERAGE, LLC, a California limited liability company ("LIB-MP").

### RECITALS

A.     PlayBev has a license agreement ("License Agreement") from Playboy Enterprises, Inc. ("Playboy") permitting it to use the Playboy and rabbit head logo on non-alcoholic energy drinks and flavored water beverages. As used herein, the term "Products" means the products defined under the License Agreement, including, without limitation, non-alcoholic beverages and water identified in the License Agreement (or any other categories of products authorized by Playboy from time to time) identified by the Playboy name or rabbit head logo pursuant to the License, whether now existing or hereafter developed.

B.     PlayBev, LIB-MP and certain other parties have entered into an Agreement dated the date hereof, whereby LIB-MP surrendered its membership interest in PlayBev in exchange for PlayBev's grant to LIB-MP of a royalty on certain revenue from the Products, as described herein.

C.     The parties desire to set forth their agreements in writing.

NOW THEREFORE, in consideration of the mutual covenants and conditions contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound, the parties agree as follows:

1.     Royalty Payment. In exchange for the surrender by LIB-MP of its membership interest (the "Lib-MP Interest") in PlayBev, LIB-MP shall receive from PlayBev (i) 7% of the gross sales ("Gross Sales") by or on behalf of PlayBev of all Products in the Territory, and (ii) 7% of any distributor fees or sub-license fees ("Distributor Fees") received by or on behalf of PlayBev and attributed to the sale of the Products (the "Royalty Payments"). The Royalty Payments shall be deemed to be a necessary expense incurred in the ordinary course of PlayBev's business.

(a)     "Gross Sales" include gross sales of the Products but does not include separately stated charges for shipping, handling, insurance or taxes, without mark-up, and are net of any returns, markdowns, rebates or discounts, charge backs, credit card merchant fees, refunds, promotional credits and similar charges reducing the actual amount received by PlayBev from the sale of the Products. If PlayBev sells any of the Products to any individual or entity that is directly or indirectly owned or controlled by PlayBev, CBC or their respective managers, officers or directors, or that is owned, directly or indirectly in whole or in part, by any of AfterBev Group, LLC, Iehab Hawatmeh or Fadi Nora, the gross sales used to compute Gross Sales hereunder shall be the invoice price that would have been charged to an unrelated purchaser in an arm's length transaction of such Products. Notwithstanding the foregoing, the restriction in the preceding sentence shall not apply with respect to any passive investment of

less than 3% in a publicly traded retailer by an officer or director of CBC or PlayBev. For purposes of clarity, Gross Sales are determined when the Product is sold to a third party, except as provided in this paragraph, and therefore in a typical sale through a distributor, Gross Sales are determined when the Product is sold to the distributor and not when the distributor sells to the retailer or the retailer sells to the ultimate consumer, unless PlayBev is receiving additional compensation for these resale transactions which would not otherwise be considered and paid as a Distributor Fee. Gross Sales shall be calculated on a cash basis so that payment is due only when payment is received for the Products.

(b)   "Distributor Fees" include any fees or other amounts paid in exchange for the right to sell or distribute the Products in a geographic area or to a specific market. Distributor Fees include any initial fees and any ongoing fees, whether calculated as a percentage of sales or otherwise. Distributor Fees do not include any amount paid for Product for which LIB-MP was already being paid a Royalty under Gross Sales or any amount paid for the common advertising or promotion of the Products; provided however, if PlayBev is compensated by a distributor under both a royalty based upon sales and distributor fee payment structure, LIB-MP shall receive its Royalty on both Gross Sales and Distributor Fees pari passu with payments to PlayBev.

(c)   For purposes of determining the Royalty Payment, any actions by CirTran Beverage Corp., a Utah corporation ("CBC") pursuant to its Exclusive Manufacturing, Marketing and Distribution Agreement with PlayBev shall be considered to be "by or on behalf of PlayBev". Sales by third party distributors or sublicensees who purchase Product from PlayBev and who pay Distributor Fees will not be considered to be "by or on behalf of PlayBev." To the extent PlayBev assigns its rights to Gross Sales or Distributor Fees to an affiliate or a third party (an "Assignee"), the obligations in this Section 1 apply to such Assignee.

2.    Priority of Royalty Payments. The obligation of PlayBev to pay the Royalty Payments to LIB-MP shall be (i) subordinated only to PlayBev's royalty payment to Playboy under the License Agreement, (ii) *pari passu* with any prepayments required by Section 1.6 of those certain Promissory Notes of PlayBev (the "Promissory Notes"), dated December 1, 2006, as amended, held by Rhino Beverages, LLC, Liberty Beverages, LLC and George Denney; and (iii) senior to all other rights of any other creditor or member of the Company, including without limitation CBC, as provided in the Intercreditor Agreement, as amended. As a condition of transferring the LIB-MP Interest, PlayBev shall cause CBC to subordinate its interests in its outstanding line of credit in favor of the Royalty Payments by executing an amendment to the Intercreditor Agreement with the holders of the Notes.

3.    Accrual of Royalty Payments. Royalty Payments shall begin to accrue on the date hereof.

4.    Payment of Royalty Payments. For purposes of determining the payments due under Section 1, PlayBev will give, or cause CBC to give, LIB-MP a report of Gross Sales and Distributor Fees showing as much detail as required in the Playboy "Statements" set forth in Section 2 d. of the License Agreement. The reports (the "Reports") will be given

      (a)   For all international sales and distribution, by the 15th day of each calendar month reporting Gross Sales and Distributor Fees for the prior completed calendar month.

      (b)   Through September 30, 2009, for all domestic sales and distribution, on a quarterly basis, within forty five days of the close of each calendar quarter reporting Gross Sales and Distributor Fees for the prior completed calendar quarter; therafter, on a monthly basis, by the 15th day of each calendar month reporting Gross Sales and Distributor Fees for the prior completed calendar month.

The Royalty Payments, if any, shall be paid to LIB-MP concurrently to when the Report is delivered as follows:

      Payments PlayBev is required to make by the terms of this Agreement shall be made by wire transfer in United States Dollars to an account specified by LIB-MP. Any and all costs or originating the wire transfer payments shall be borne by PlayBev. No deduction shall be made for income or other taxes unless required by law or with LIB-MP's written consent.

      In determining the proper rate of exchange to be applied to the payments due hereunder based on Gross Sales or Distributor Fees paid or payable in funds other than United States dollars, it is agreed that:

      (1)   PlayBev shall calculate Royalties on a calendar month basis in each local currency (with each such month considered to be a separate accounting period for the purposes of computing Royalties);

      (2)   For each local currency PlayBev shall compute the conversion rate of each month as a whole into United States dollars utilizing the mid-range rates as quoted by Reuters or other sources as published in the Wall Street Journal on the last business day of each relevant calendar month; and

      (3)   The converted amounts (in US currency) shall be added together on a cumulative basis and will be reflected in the Reports.

    5.    Territory. As used herein, the "Territory" consists of all territories identified in the License Agreement as it now exists or as may be amended in the future, including, without limitation, the United States, Australia, Benelux, Brazil, Canada, Chile, China, Denmark, France, Germany, Greece, Hong Kong, Ireland, Israel, Italy, Japan, Korea, Lebanon, Mexico, New Zealand, Norway, Peru, Philippines, Portugal, Russia, South Africa, Spain, Sweden, Switzerland, Taiwan, Thailand, United Arab Emirates, United Kingdom and their respective territories, possessions and protectorates.

    6.    Term and Termination.

The initial term of this Agreement shall commence as of the date first written above and shall terminate on upon expiration or termination of the License Agreement (the "Term") (including all renewal terms contained therein).

7.     Representations and Warranties.  LIB-MP warrants to PlayBev and PlayBev warrants to Lib-MP that (i) it is an entity duly organized, valid, existing and in good standing under the laws of the state, province or country of its incorporation or establishment and has the corporate or equivalent power to own its assets and properties and to carry on its business as now being conducted; (ii) its obligations hereunder shall be performed in full compliance with all applicable determinations of any governmental authority and all applicable federal, state or local laws, statutes, ordinances, rules, regulations and orders ("Applicable Laws"); (iii) it will cooperate with the other, as necessary, to remain in full compliance with the Applicable Laws; (iv) the execution, delivery and performance of this Agreement have been duly authorized, do not violate its certificate of organization, operating or similar governing instruments or Applicable Law and do not, and with the passage of time will not, materially conflict with or constitute a breach under any other agreement, judgment or instrument to which it is a party or by which it is bound; and (v) this Agreement is the legal, valid and binding obligation of such party, enforceable in accordance with its terms.

8.     Covenants Regarding Playboy License Agreement.  PlayBev covenants and agrees that it will use its use its commercially reasonable efforts to maintain the License Agreement in full force and effect during the term of this Agreement, other than the removal of rights for areas outside of the Territory.  PlayBev shall not take any action or allow any inaction with the intent that it cause an event of default under the License Agreement.  Pursuant to the foregoing, in the event that the License Agreement terminates by virtue of PlayBoy acquiring all of the assets or more than 50% voting control of PlayBev (either directly or through an affiliated entity), then the obligation to pay this Royalty shall survive such transaction indefinitely.  Notwithstanding the foregoing, however, LIB-MP will engage in good faith negotiations with Playboy to facilitate a buy-out of this Agreement by Playboy.

9.     Default.

(a)     In the event that PlayBev fails to make any Royalty Payments when due or within five days after the due date, or if Playbev or CBC breaches this Agreement, or if PlayBev fails to make any payment required under the Promissory Notes when due or within any applicable grace period (either such event, a "Default"), LIB-MP may deliver written notice (the "Default Notice") to PlayBev that it has defaulted under this Agreement.

(b)     Outstanding Royalty Payments that are in Default shall be subject to accrued interest at a rate of 1% per month, or the maximum rate permitted by law (whichever is less), commencing from the date of Default.  Additionally, so long as PlayBev is in Default of its obligations to LIB-MP, it shall not make any distributions to any of its members, pay its managers any fees or salaries (or to any entities owned or controlled by them), pay down the CBC line of credit, or pay the CBC fees under the Exclusive Manufacturing and Distribution Agreement; provided, that PlayBev shall nevertheless have the ability to pay employees (excluding PlayBev's managers or officers and directors of CBC) and third party vendors directly or through the Exclusive Manufacturing, Marketing and Distribution Agreement.  This restriction shall apply even if LIB-MP receives the Springing Interest.

(c)     "Cure Period" as used in this Section shall mean a period commencing on delivery of a Default Notice and ending on the earlier of the Default being cured or (i) nine

months thereafter, in the case of a Default Notice delivered with respect to any of the first four quarterly Royalty Payments due under this Agreement, (ii) six months thereafter, in the case of a Default Notice delivered with respect to the fifth through eighth quarterly Royalty Payments due under this Agreement, or (iii) three months thereafter, in the case of a Default Notice delivered with respect to the ninth or any subsequent quarterly Royalty Payment due under this Agreement.

(d)    If, after a Default Notice and at the end of the applicable Cure Period, PlayBev has not cured the Default and paid the Royalty Payments and accrued interest in full, including any Royalty Payments that became due during the Cure Period, PlayBev shall issue to LIB-MP an interest (the "Springing Interest") which is the economic equivalent of 21,175 Class A Units of PlayBev as currently constituted, as more fully described below. If the Springing Interest has been issued and remains outstanding, a further Default Notice will cause the Springing Interest to have full voting rights equal to the amount of votes it would have on an equivalent number of Class A Membership Interests, and LIB-MP shall be entitled to appoint a number of managers to the PlayBev Management Committee equal to the number of managers who are (i) Ichab Hawatmeh, (ii) Fadi Nora, and (iii) affiliates of Cirtran Beverage Corp., Citran Corporation or AfterBev, LLC. Additionally, if the appointment of managers by LIB-MP results in there being an even number of managers, the then current managers and the LIB-MP appointed managers shall select an independent third party neutral to serve as an independent manager. LIB-MP shall retain its voting rights and the management seats until such time as PlayBev cures all Defaults. If all Defaults are cured and the Springing Interest is cancelled pursuant to Section 9 (i) below, then the Springing Interest may again be issued as a result of a subsequent Default Notice and expiration of the resulting Cure Period.

(e)    In the event PlayBev issues additional Class A Units, Class B Units or any other interests under PlayBev's Operating Agreement, or in the event PlayBev is recapitalized, the Springing Interest shall be subject to any dilution or adjustment pari passu with the Class A Units currently outstanding on the date of this Agreement, including the LIB-MP Interest exchanged under the terms of this Agreement.

(f)    Except as otherwise specified in Section 9 (d) above, LIB-MP, as holder of the Springing Interest, will not be a member of PlayBev but will hold an economic interest in PlayBev represented by the Springing Interest. Except as otherwise restricted in Section 9 (b) above, as holder of the Springing Interest, LIB-MP will be entitled to the same distributions (the "Distributions"), whether in cash or in kind, and whether from operations or upon liquidation, as the holders of the Class A Units based on the number of Class A Units represented by the Springing Interest. Any Distributions received by LIB-MP shall be credited against any outstanding Royalty Payments owed by PlayBev to LIB-MP;

(g)    PlayBev's obligation to pay, and LIB-MP's right to collect, Royalty Payments and reasonable attorneys' fees, collection costs and other costs (the "Default Costs") incurred in connection with the Default, shall continue to accrue prior to and after the date of the Default Notice and the receipt by LIB-MP of the Springing Interest.

(h)    The Springing Interest may not be transferred or sold by LIB-MP. However, in the event of merger, acquisition or sale of all or substantially (a "Sale Transaction")



all of the assets of PlayBev while the Springing Interest is held by LIB-MP, LIB-MP may, in its sole discretion, convert its rights to the Royalty payment in exchange for the same consideration as the equivalent Class A Units would be entitled to receive in the Sale Transaction, subject to the limitation of Section 9(i). Any such consideration received shall be credited against outstanding Royalty Payments owed by Playbev to LIB-MP. If LIB-MP has not elected to convert its rights, in no event shall such sale extinguish or otherwise cancel this Agreement, and LIB-MP shall be entitled to receive Royalty Payments from a successor in interest.

(i) Once PlayBev cures the Default, including the payment to LIB-MP of all outstanding Royalty Payments and Default Costs, the Springing Interest be immediately canceled without further action by LIB-MP and LIB-MP shall no longer be entitled Distributions with respect to the Springing Interest unless and until the Springing Interest is re-issued in connection with a subsequent Default.

(j) During the period that the Springing Interest is outstanding, PlayBev agrees that it will not enter into any material agreement with CBC, the managers of PlayBev or their respective affiliates unless the terms of such agreement is approved by LIB-MP or the holders of 100% of the voting membership interests in PlayBev.

10.    Records and Right to Audit.

(a)    Maintenance of Records. During the term of this Agreement, PlayBev shall keep, maintain and preserve for at least five (5) years following the relevant transaction complete and accurate books, accounts, records and other materials covering any and all transactions related to this Agreement. LIB-MP or its duly authorized representatives, at LIB-MP's expense, shall have the right, during the term of the License Agreement and for one year after the termination or expiration of the License Agreement, to inspect and audit such records related to this Agreement and any records maintained by third party suppliers, vendors, sub-licensees or distributors.

(b)    Inspection and Audit. All materials shall be available for inspection and audit (including photocopying) at any time during normal business hours, and upon at least five days notice by LIB-MP or its representatives. PlayBev will cooperate with LIB-MP or its representatives in the performance of their duties of inspection and audit and shall permit full access to the records relating to this Agreement.

(c)    Deficiencies. Any discrepancies found from the audit shall be paid to LIB-MP must be paid within 15 days after PlayBev receives a copy of the audit unless CBC reasonably objects to the conclusions of the audit. If PlayBev does so object, the parties shall attempt to resolve their differences in good faith. If they are unable to do so within 30 days after PlayBev's objection, then upon the request of either party, each party will designate an independent accountant. The two accountants shall select an independent auditor to re-audit the records and the conclusion of such independent auditor shall be binding on the parties. If the final audit finds that the Royalty has been underpaid by more than five percent (5%), then PlayBev shall bear all costs of the audits. Additionally, any outstanding balances shall accrue interest at a rate of 1% per month from the date of the error through the date of payment.

11. <u>Miscellaneous</u>.

    (a)   <u>Assignment</u>. This Agreement shall be binding upon the parties and their respective successors and assigns. Neither party may assign this Agreement in whole or in part without the other party's prior written consent, which consent shall not be unreasonably withheld or delayed.

    (b)   <u>Successors</u>. All of the terms of this Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties and their respective successors and permitted assigns, and nothing in this Agreement is intended to confer any rights, remedy or benefit upon any other person.

    (c)   <u>Notices</u>. All notices hereunder shall be sufficiently given for all purposes hereunder if in writing and delivered personally, sent by document, overnight delivery service or, to the extent receipt is confirmed, faxed to the appropriate address or number set forth below.

If to PlayBev or CBC:
Ichab Hawatmeh
c/o CirTran Beverage Corp.
4125 South 6000 West
West Valley City, Utah 84128
Fax: (801) 963-5180

With a Copy To:
Paul H. Shaphren, Esq.
Callister Nebeker & McCullough
2180 South 1300 East, Suite 600
Salt Lake City, Utah 84106
Fax: (801) 746-8607

If to LIB-MP:
Jeff Pollack
LIB MP Beverage, LLC
1100 Glendon Ave., Suite 1000
Los Angeles, CA 90024
Fax: (310) 208-4011

With a Copy To:
metlawgroup
5959 West Century Blvd., Suite 950
Los Angeles, CA 90045
Attention: David Michail
Fax: (310) 868-2656

    or at such other address and to the attention of such other person as either party may designate by written notice to the other.

    (d)   <u>Governing Law, Dispute Resolution</u>. This Agreement shall be governed by and construed by the laws of the State of California, disregarding the conflicts of laws provisions thereof. Any claim, dispute or controversy arising out of, or relating to any section of this Agreement or the making, performance, or interpretation of the rights and obligations explicitly set forth in this Agreement shall, upon the election by written notice of either party, be settled on an expedited basis by binding arbitration in Las Vegas, Nevada before a single arbitrator mutually agreeable to the parties, or if no agreement is reached, before a single arbitrator from the American Arbitration Association selected in accordance with its rules then in effect, which arbitration shall be conducted in accordance with such rules, and judgment on the arbitration award may be entered in any court having jurisdiction over the subject matter of controversy.



(e)    <u>Attorneys' Fees</u>. In the event of any litigation concerning any controversy, claim or dispute among the parties hereto, arising out of or relating to this Agreement or the breach hereof, or the interpretation hereof, the prevailing party shall be entitled to recover from the losing party reasonable expenses, attorneys' fees, and costs incurred therein or in the enforcement or collection of any judgment or award rendered therein.

(f)    <u>Amendment and Waiver</u>. Except as otherwise expressly provided herein, any provision of this Agreement may be amended only with the written consent of the parties. No term or provision of this Agreement shall be deemed waived unless such waiver shall be in writing and signed by the party making such waiver. Any waiver of a particular breach of this Agreement shall not constitute a waiver of any other breach, nor shall any waiver be deemed a continuing waiver unless it so states expressly.

(g)    <u>Entire Agreement; Severability</u>. This Agreement supersedes all proposals and term sheets, oral or written, all negotiations, conversations or discussions between or among parties relating to the subject matter hereof and all past dealing or industry custom. If any provision of this Agreement is held to be illegal or unenforceable, that provision shall be limited or eliminated to the minimum necessary so that this Agreement shall otherwise remain in full force and effect and enforceable.

(h)    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts each of which shall be deemed to be an original, and all of which together shall constitute one and the same Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

PLAY BEVERAGES, LLC,
a Delaware limited liability company

By:_____
    Ichab Hawatmeh
    Manager

By:_____
    Fadi Nora
    Manager

LIB MP BEVERAGE, LLC,
a California liability company

By:_____
    Jeffery Pollack
    Manager

CIRTRAN BEVERAGE CORP.,
A Utah Corporation

(e)     Attorneys' Fees.  In the event of any litigation concerning any controversy, claim or dispute among the parties hereto, arising out of or relating to this Agreement or the breach hereof, or the interpretation hereof, the prevailing party shall be entitled to recover from the losing party reasonable expenses, attorneys' fees, and costs incurred therein or in the enforcement or collection of any judgment or award rendered therein.

(f)     Amendment and Waiver.  Except as otherwise expressly provided herein, any provision of this Agreement may be amended only with the written consent of the parties. No term or provision of this Agreement shall be deemed waived unless such waiver shall be in writing and signed by the party making such waiver.  Any waiver of a particular breach of this Agreement shall not constitute a waiver of any other breach, nor shall any waiver be deemed a continuing waiver unless it so states expressly.

(g)     Entire Agreement; Severability.  This Agreement supersedes all proposals and term sheets, oral or written, all negotiations, conversations or discussions between or among parties relating to the subject matter hereof and all past dealing or industry custom.  If any provision of this Agreement is held to be illegal or unenforceable, that provision shall be limited or eliminated to the minimum necessary so that this Agreement shall otherwise remain in full force and effect and enforceable.

(h)     Counterparts.  This Agreement may be executed in one or more counterparts each of which shall be deemed to be an original, and all of which together shall constitute one and the same Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

PLAY BEVERAGES, LLC,
a Delaware limited liability company

By: _____
    Ichab Hawatmeh
    Manager

By: _____
    Fadi Nora
    Manager

LIB MP BEVERAGE, LLC,
a California liability company

By: _____
    Jeffery Pollack
    Manager
    CIRTRAN BEVERAGE CORP.,
    A Utah Corporation

# EXHIBIT 2

met met

Media, Entertainment and Technology Counsel

www.metlawgroup.com

5959 West Century Blvd.
Suite 950
Los Angeles, CA 90045
Tel: +01 (310) 670-4656
Fax: +01 (310) 868-2656
Skype: +01 (310) 594 3076

Via Federal Express 7972 5620 9194

January 15, 2009

Play Beverages, LLC
Attn: Iehab Hawatmeh
c/o CirTran Beverage Corp.
4125 South 6000 West
West Valley City, Utah 84128

With copy to:

Paul H. Shaphren, Esq.
Callister Nebeker & McCullough
2180 South 1300 East, Suite 600
Salt Lake City, Utah 84106

RE:    Notice of Default

Dear Iehab:

    As you know, this firm represents the interests of LIB-MP, LLC ("LIB-MP").
Pursuant to Sections 4 (a) and (b) of the Royalty Agreement between Play Beverages,
LLC ("PlayBev") and LIB-MP dated August 23, 2008 (the "Agreement"), PlayBev is to
provide periodic reports to LIB-MP (each a "Report") and associated Royalty payments
(as defined in the Agreement) as follows:

(i)     for international sales and distribution, by the 15th day of each calendar
        month; and

(ii)    for domestic sales and distribution on a quarterly basis (until Sept 30, 2009),
        within 45 days of the close of each calendar quarter.

As of this date, PlayBev is in default and has failed to provide Reports or Royalty
payments for: (a) any international sales and distribution from the months of September,
October, November or December; or (b) any domestic sales for the close of Q3 2008
calendar quarter.

1

Be advised that pursuant to Section 9 (a) of the Agreement, all outstanding Royalty payments will commence accruing interest at a rate of 1% per month, and you shall not make certain distributions to members, payments to managers or other disbursements from PlayBev to CBC as prescribed therein.

You understand, of course, that nothing contained in this letter shall be deemed a waiver of any rights our client may possess, nor of any factual or legal position they may further allege, and hereby expressly reserve any such rights. We would advise you to conduct yourselves accordingly and remedy the default as soon as possible. Thank you for your attention to this matter.

Sincerely,

David Michail of
METLAWGROUP

CC: Paul Shaphren; Jeff Pollack

met met

Media, Entertainment and Technology Counsel

www.metlawgroup.com

6033 West Century Blvd.
Suite 950
Los Angeles, CA 90045
Tel: +01 (310) 670-4656
Fax: +01 (310) 868-2656
Skype: +01 (310) 594 3076

Via Federal Express 7962 5977 9911

January 15, 2009

Play Beverages, LLC
Attn: Iehab Hawatmeh
c/o CirTran Beverage Corp.
4125 South 6000 West
West Valley City, Utah 84128

With copy to:

Paul H. Shaphren, Esq.
Callister Nebeker & McCullough
2180 South 1300 East, Suite 600
Salt Lake City, Utah 84106

RE:     Notice of Default

Dear Iehab:

As you know, this firm represents the interests of LIB-MP, LLC ("LIB-MP").
Pursuant to Sections 4 (a) and (b) of the Royalty Agreement between Play Beverages,
LLC ("PlayBev') and LIB-MP dated August 23, 2008 (the "Agreement"), PlayBev is to
provide periodic reports to LIB-MP (each a "Report") and associated Royalty payments
(as defined in the Agreement) as follows:

(i)      for international sales and distribution, by the 15th day of each calendar
          month; and

(ii)     for domestic sales and distribution on a quarterly basis (until Sept 30, 2009),
          within 45 days of the close of each calendar quarter.

As of this date, PlayBev is in default and has failed to provide Reports or Royalty
payments for: (a) any international sales and distribution from the months of September,
October, November or December; or (b) any domestic sales for the close of Q3 2008
calendar quarter.

1

Be advised that pursuant to Section 9 (a) of the Agreement, all outstanding Royalty payments will commence accruing interest at a rate of 1% per month, and you shall not make certain distributions to members, payments to managers or other disbursements from PlayBev to CBC as prescribed therein.

You understand, of course, that nothing contained in this letter shall be deemed a waiver of any rights our client may possess, nor of any factual or legal position they may further allege, and hereby expressly reserve any such rights. We would advise you to conduct yourselves accordingly and remedy the default as soon as possible. Thank you for your attention to this matter.

Sincerely,

David Michail of
METLAWGROUP

CC: Paul Shaphren; Jeff Pollack

2

# EXHIBIT 3



metlawgroup
Media, Entertainment and Technology Counsel

www.metlawgroup.com

5959 West Century Blvd.
Suite 950
Los Angeles, CA 90045
Tel: +01 (310) 674656
Fax: +01 (310) 863-2656
Skype: +01 (310) 594 3076

<u>Via Facsimile:</u>          (801) 963-5180  AND (801) 746-8607
<u>With Original to Follow Via US Mail</u>


February 13, 2009


Play Beverages, LLC
Attn: Iehab Hawatmeh
c/o CirTran Beverage Corp.
4125 South 6000 West
West Valley City, Utah 84128

With copy to:

Paul H. Shaphren, Esq.
Callister Nebeker & McCullough
2180 South 1300 East, Suite 600
Salt Lake City, Utah 84106


RE:    <u>**Second Default Notice**</u>

Dear Iehab:

While reserving the rights of our client LIB-MP, LLC ("LIB-MP") under the Notice of Default dated January 15, 2009 (the "First Notice of Default"), pursuant to Sections 9 (a) of the Royalty Agreement between Play Beverages, LLC ("PlayBev") and LIB-MP dated August 23, 2008 (the "Agreement"), we are providing this second concurrent notice of default (the "Second Default Notice"). This Second Default Notice is attributed to PlayBev's failure to make appropriate payments under those certain promissory notes held by Rhino Beverages, LLC, Liberty Beverages, LLC and George Denney.

As per the First Notice of Default, we reiterate that under Section 9 (b) you are expressly prohibited from making any distributions or payments to members, managers or further allocations of funds received by CBC (or any other entity) on behalf of PlayBev for loan repayments (including payments to Cirtran Corporation), distributions, or any other type of transfer other than in the ordinary course of business for trade payables. Any previous or future transfer in contravention of this directive shall be considered fraudulent and we will be taking action against the involved parties

accordingly. Notwithstanding this, we reserve our rights pertaining to your accounting of PlayBev funds and co-mingling of assets by CBC.

You understand, of course, that nothing contained in this letter shall be deemed a waiver of any rights our client may possess, nor of any factual or legal position they may further allege, and hereby expressly reserve any such rights. We would advise you to conduct yourselves accordingly and remedy the default as soon as possible. Thank you for your attention to this matter.

Sincerely,

David Michail of
METLAWGROUP

CC: Paul Shaphren; Jeff Pollack

# Fax



5959 West Century Blvd., Suite 950 · Los Angeles, CA 90045
Telephone: (310) 670-4656 · Facsimile: (310) 868-2656 · email: david.michail@michaillaw.com

| **To:** | Paul Shaphren | **From:** | David F. Michail |
|---|---|---|---|
| **Fax:** | 801-746-8607 | **Pages:** | 2  to follow |
| **Phone:** | | **Date and Time:** | 2/13/2009 3:19 PM |
| **Re:** | 2nd Notice of Default | **CC:** | |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

● Comments    # CONFIDENTIAL FACSIMILE

CONFIDENTIALITY NOTICE: The information contained in this facsimile message is intended only for the personal and confidential use of the addressee named above. The information is privileged, confidential and is exempt form disclosure. If the reader of this message is not the intended recipient, you are hereby notified that any review, dissemination or copy of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and return the original message to us at the address above via United States Postal Service. We will reimburse any reasonable costs you incur in notifying us and returning the message to us. Thank you.

2005-02/13 15:24 FAX 13104104042

```
*********************
***   TX REPORT   ***
*********************


TRANSMISSION OK


TX/RX NO              0732
CONNECTION TEL                    18017468607
SUBADDRESS
CONNECTION ID
ST. TIME              02/13 15:23
USAGE T               01'05
PGS. SENT               3
RESULT                OK
```

*01-02 79071309*

# Fax



5959 West Century Blvd., Suite 950 · Los Angeles, CA 90045
Telephone: (310) 670-4656 · Facsimile: (310) 868-2656 · email: david.michail@michaillaw.com

| **To:** | Iehab Hawatmeh | | **From:** | David F. Michail |
|---|---|---|---|---|
| **Fax:** | 801-963-5180 *8873* | | **Pages:** | 2 to follow |
| **Phone:** | | | **Date and Time:** | 2/13/2009 3:18 PM |
| **Re:** | 2ⁿᵈ Notice of Default | | **CC:** | |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

● **Comments**

# CONFIDENTIAL FACSIMILE

CONFIDENTIALITY NOTICE: The information contained in this facsimile message is intended only for the personal and confidential use of the addressee named above. The information is privileged, confidential and is exempt form disclosure. If the reader of this message is not the intended recipient, you are hereby notified that any review, dissemination or copy of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and return the original message to us at the address above via United States Postal Service. We will reimburse any reasonable costs you incur in notifying us and returning the message to us. Thank you.

```
*********************
***   TX REPORT   ***
*********************
```

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 0735 |
| CONNECTION TEL | 18019638873 |
| SUBADDRESS | |
| CONNECTION ID | |
| ST. TIME | 02/13 15:44 |
| USAGE T | 01'09 |
| PGS. SENT | 3 |
| RESULT | OK |

2009 02/13 15:30 FAX 13104104042

```
                              **********************
                         ***    TX REPORT    ***
                              **********************


      TRANSMISSION OK


      TX/RX NO                  0734
      CONNECTION TEL                  18019638873
      SUBADDRESS
      CONNECTION ID
      ST. TIME                  02/13 15:29
      USAGE T                   01'09
      PGS. SENT                    3
      RESULT                    OK
```

# EXHIBIT 4



www.metlawgroup.com

5959 West Century Blvd.
Suite 950
Los Angeles, CA 90045
Tel: +01 (310) 670-4656
Fax: +01 (310) 868-2656
Skype: +01 (310) 594 3076

Via Facsimile:          (801) 963-5180  AND (801) 746-8607
With Original to Follow Via US Mail

February 18, 2009

Play Beverages, LLC
Attn: Iehab Hawatmeh
c/o CirTran Beverage Corp.
4125 South 6000 West
West Valley City, Utah 84128

With copy to:

Paul H. Shaphren, Esq.
Callister Nebeker & McCullough
2180 South 1300 East, Suite 600
Salt Lake City, Utah 84106

RE:     Third Notice of Default

Dear Iehab:

      This third notice of default is being made on behalf of our client LIB-MP, LLC ("LIB-MP"). Pursuant to Sections 4 (a) and (b) of the Royalty Agreement between Play Beverages, LLC ("PlayBev") and LIB-MP dated August 23, 2008 (the "Agreement"), PlayBev is to provide periodic reports to LIB-MP and associated Royalty payments (as defined in the Agreement) for international sales and distribution, by the 15th day of each calendar month. PlayBev is delinquent on both submitting the January statement and Royalty payments despite its receipt of international distribution fees last month.

      We must reiterate that the restrictions imposed on PlayBev, Cirtran and CBC under Section 9 (a) of the Agreement remain in full force, and any further prohibited transfer of funds in contravention of this Section shall be considered a willful act of fraud.

      Despite our client's efforts to try to mitigate further damage in the relationship and offer you an opportunity to work out an amicable resolution, we have not received any indication of cooperation from you. We believe that you grossly underestimate the

situation you are in as well as the implications to both Citran and CBC for participating in these fraudulent activities.

You should be aware that certain information revealed in the audit indicates serious improprieties of co-mingling funds and facilitating prohibited transfers to CBC, PlayBev Managers and Cirtran Corporation (and their affiliates). It is our contention that all of the involved parties willfully ignored the senior rights of our client and the note holders under the Royalty Agreement and Intercreditor Agreement dated August 23, 2008.

If you do not promptly cure this default and remit our client's funds by 5:00 PM PST February 20, 2009 to our offices, our client is prepared to pursue all legal and equitable remedies against the involved parties, including, without limitation, Citran and CBC. Be further advised that LIB-MP will also be sharing the results of the audit with the note holders and members of PlayBev.

You understand, of course, that nothing contained in this letter shall be deemed a waiver of any rights our client may possess, nor of any factual or legal position they may further allege, and hereby expressly reserve any such rights. We would advise you to conduct yourselves accordingly and remedy the default as soon as possible. Thank you for your attention to this matter.

Sincerely,

David Michail of
METLAWGROUP

CC: Paul Shaphren; Jeff Pollack

2

 

5959 West Century Blvd., Suite 950 · Los Angeles, CA 90045
Telephone: (310) 670-4656 · Facsimile: (310) 868-2656 · email: david.michail@michaillaw.com



| | | | |
|---|---|---|---|
| **To:** | Iehab Hawatmeh | **From:** | David F. Michail |
| **Fax:** | 801-963-8873 | **Pages:** | 29 to follow |
| **Phone:** | | **Date and Time:** | 2/20/2009 9:54 AM |
| **Re:** | Resend 3rd Notice of Default | **CC** | |

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

● **Comments:**

CONFIDENTIALITY NOTICE: The information contained in this facsimile message is intended only for the personal and confidential use of the addressee named above. The information is privileged, confidential and is exempt form disclosure. If the reader of this message is not the intended recipient, you are hereby notified that any review, dissemination or copy of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and return the original message to us at the address above via United States Postal Service. We will reimburse any reasonable costs you incur in notifying us and returning the message to us. Thank you.

```
********************
***   TX REPORT   ***
********************


TRANSMISSION OK

TX/RX NO                0780
CONNECTION TEL                18019638873
SUBADDRESS
CONNECTION ID
ST. TIME                02/20 10:00
USAGE T                 00'53
PGS. SENT               3
RESULT                  OK
```

 

5959 West Century Blvd., Suite 950 · Los Angeles, CA 90045
Telephone: (310) 670-4656 · Facsimile: (310) 868-2656 · email: david.michail@michaillaw.com

# Fax

| | | | |
|---|---|---|---|
| **To:** | Paul Shaphren | **From:** | David F. Michail |
| **Fax:** | 801-746-8607 | **Pages:** | 2 9 to follow |
| **Phone:** | | **Date and Time:** | 2/20/2009 9:54 AM |
| **Re:** | Resend 3rd Notice of Default | **CC** | |

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

● **Comments:**

CONFIDENTIALITY NOTICE: The information contained in this facsimile message is intended only for the personal and confidential use of the addressee named above. The information is privileged, confidential and is exempt form disclosure. If the reader of this message is not the intended recipient, you are hereby notified that any review, dissemination or copy of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and return the original message to us at the address above via United States Postal Service. We will reimburse any reasonable costs you incur in notifying us and returning the message to us. Thank you.

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO                 0779
CONNECTION TEL                      18017468607
SUBADDRESS
CONNECTION ID
ST. TIME                 02/20 09:58
USAGE T                  00'51
PGS. SENT                   3
RESULT                   OK
```

# EXHIBIT 5

**met** **met**
Media, Entertainment and Technology Counsel

www.metlawgroup.com

5959 West Century Blvd.
7th Floor
Los Angeles, CA 90045
Tel: +01 (310) 670-4656
Fax: +01 (310) 868-2656

<u>Via Facsimile:</u>        (801) 963-5180 AND (801) 746-8607
<u>With Original to Follow Via US Mail</u>

September 15, 2009

Play Beverages, LLC
Attn: Iehab Hawatmeh
c/o CirTran Beverage Corp.
4125 South 6000 West
West Valley City, Utah 84128

With copy to:

Paul H. Shaphren, Esq.
Callister Nebeker & McCullough
2180 South 1300 East, Suite 600
Salt Lake City, Utah 84106

**RE:    Demand For Springing Interest**
**Fourth Notice of Default on Payment of Royalties**

Dear Iehab:

Pursuant to Section 9 (d) of the of the Royalty Agreement between Play Beverages, LLC ("PlayBev") and LIB-MP Beverages, LLC ("LIB-MP") dated August 23, 2008 (the "Agreement"), you are required to immediately issue LIB-MP 21,175 Class A Units to LIB-MP as its Springing Interest (as such term is defined under the Agreement) in the event of an uncured default. This letter is intended as a demand for such Springing Interest as you have failed to cure the January 15, 2009 Default Notice in a timely fashion.

Further, this letter also constitutes notice LIB-MP's fourth notice of default under Section 4 (a) of the Agreement because PlayBev has failed to pay our client Royalties as follows:

(a) on international revenues from March through August 2009; and
(b) on domestic revenues from March through June 2009.

1

Additionally, we reiterate from our February 18, 2009 Default Notice that the sweeping of PlayBev revenues by Cirtran Beverage Corp. ("CBC") constitutes criminal embezzlement and conversion of PlayBev's assets. As a creditor of PlayBev, we consider this activity a fraudulent transfer. To this end, such activity also constitutes willful breach of Sections 9 (b) of the Agreement, which prohibits any payment whatsoever, including return of loan amounts or payment of fees to CBC, Cirtran or yourself. You are to immediately cease all such activities and return and account for all funds to PlayBev by the deadline set forth below.

You have until Monday, September 21, 2009, 5:00 PM (PST), to comply with our demand to: (a) issue of the Class A Units as well as an updated cap table, (b) return and account for all funds transferred to CBC, and (c) pay all Royalty payments plus accrued interest and legal and audit fees. Failure to comply will result in legal action not only against PlayBev, but also against all related parties in the perpetuation of the fraud including CBC, Cirtran Corp, yourself and other managers and officers of these respective entities. You are advised to conduct yourself accordingly.

You understand, of course, that nothing contained in this letter shall be deemed a waiver of any rights our client may possess, nor of any factual or legal position they may further allege, and hereby expressly reserve any such rights. Thank you for your attention to this matter.


Sincerely,

David Michail of
METLAWGROUP

CC: Paul Shaphren; Jeff Pollack

2

 

Media, Entertainment and Technology Counsel

5959 West Century Blvd., 7th Floor · Los Angeles, CA 90045
Telephone: (310) 670-4656 · Facsimile: (310) 868-2656 · email: david.michail@michaillaw.com



**FAXED**

SEP 1 7 2009



| To: | Iehab Hawatmeh | From: | David F. Michail |
|---|---|---|---|
| Fax: | 801-963-5180 | Pages: | 2 to follow |
| Phone: | | Date and Time: | 9/17/2009 3:01 PM |
| Re: | Fourth Notice of Default | CC | |

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

● **Comments:**

CONFIDENTIALITY NOTICE: The information contained in this facsimile message is intended only for the personal and confidential use of the addressee named above. The information is privileged, confidential and is exempt form disclosure. If the reader of this message is not the intended recipient, you are hereby notified that any review, dissemination or copy of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and return the original message to us at the address above via United States Postal Service. We will reimburse any reasonable costs you incur in notifying us and returning the message to us. Thank you.

TRANSMISSION VERIFICATION REPORT

```
                                    TIME   : 05/30/2008 05:50
                                    NAME   :
                                    FAX    :
                                    TEL    :
                                    SER.#  : B9N966059
```

```
        DATE,TIME              05/30  05:49
        FAX NO./NAME           18019635180
        DURATION               00:00:37
        PAGE(S)                03
        RESULT                 OK
        MODE                   STANDARD
                               ECM
```

 

Media, Entertainment and Technology Counsel

5959 West Century Blvd., 7th Floor · Los Angeles, CA 90045
Telephone: (310) 670-4656 · Facsimile: (310) 868-2656 · email: david.michail@michaillaw.com



FAXED

SEP 1 7 2009



| | | | |
|---|---|---|---|
| **To:** | Paul Shaphren | **From:** | David F. Michail |
| **Fax:** | 801-746-8607 | **Pages:** | 2 to follow |
| **Phone:** | | **Date and Time:** | 9/17/2009 3:02 PM |
| **Re:** | Fourth Notice of Default | **CC** | |

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

● **Comments:**

CONFIDENTIALITY NOTICE: The information contained in this facsimile message is intended only for the personal and confidential use of the addressee named above. The information is privileged, confidential and is exempt form disclosure. If the reader of this message is not the intended recipient, you are hereby notified that any review, dissemination or copy of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and return the original message to us at the address above via United States Postal Service. We will reimburse any reasonable costs you incur in notifying us and returning the message to us. Thank you.

TRANSMISSION VERIFICATION REPORT

```
                                    TIME  : 05/30/2008 05:46
                                    NAME  :
                                    FAX   :
                                    TEL   :
                                    SER.# : B9N966059
```

```
        DATE,TIME              05/30  05:45
        FAX NO./NAME           18017468607
        DURATION               00:00:33
        PAGE(S)                03
        RESULT                 OK
        MODE                   STANDARD
                               ECM
```

# EXHIBIT 6

met met
**Media, Entertainment and Technology Counsel**

www.metlawgroup.com

7th Floor
Los Angeles, CA 90045
Tel: +01 (310) 670-4656
Fax: +01 (310) 868-2656

<u>Via Facsimile:</u>     (801) 963-5180 AND (801) 746-8607
<u>With Original to Follow Via US Mail</u>

October 21, 2009

Play Beverages, LLC
Attn: Iehab Hawatmeh
c/o CirTran Beverage Corp.
4125 South 6000 West
West Valley City, Utah 84128

With copy to:

Paul H. Shaphren, Esq.
Callister Nebeker & McCullough
2180 South 1300 East, Suite 600
Salt Lake City, Utah 84106

**RE:     Demand For Springing Interest**
**Fifth Notice of Default on Payment of Royalties**

Dear Iehab:

Pursuant to Section 9 (d) of the of the Royalty Agreement between Play Beverages, LLC ("PlayBev') and LIB-MP Beverages, LLC ("LIB-MP") dated August 23, 2008 (the "Agreement"), you are required to immediately issue LIB-MP 21,175 Class A Units to LIB-MP as its Springing Interest (as such term is defined under the Agreement) in the event of an uncured default. This letter is intended as a demand for such Springing Interest as you have failed to cure the January 15, 2009 Default Notice in a timely fashion.

Further, this letter also constitutes notice LIB-MP's fifth notice of default under Section 4 (a) of the Agreement because PlayBev has failed to pay our client Royalties as follows:

(a) on international revenues from August 2008 through September 2009; and
(b) on domestic revenues from August 2008 through June 2009.

Based upon the attached balance sheet supplied by you, effective as of December 2008, PlayBev owed our client $24,701.00 and has failed to pay this amount or cure its default with respect thereto. You should be aware that our client does not, by making this demand, waive its right to allege that additional Royalty payments may be due from this period.

Finally, we reserve our claims and other allegations stated in our previous letter dated September 15, 2009, including, without limitation, allegations of fraud and conversion of assets by CBC, Citran and associated parties.

You have until Friday October 23, 2009, 5:00 PM (PST), to comply with our demand to: (a) issue of the Class A Units as well as an updated cap table, (b) return and account for all funds transferred to CBC, and (c) pay all Royalty payments plus accrued interest and legal and audit fees.

. You understand, of course, that nothing contained in this letter shall be deemed a waiver of any rights our client may possess, nor of any factual or legal position they may further allege, and hereby expressly reserve any such rights. Thank you for your attention to this matter.


Sincerely,

David Michail of
METLAWGROUP

CC: Paul Shaphren; Jeff Pollack
/enclosure.

## PLAY BEVERAGES, LLC
## BALANCE SHEETS - Confidential

| | December 31, 2008 | September 30, 2008 | June 30, 2008 | March 31, 2008 | December 31, 2007 | December 31, 2006 |
|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | |
| Current assets: | | | | | | |
| Royalty due from CirTran Beverage Corp.* | $ 710,820 | $ 519,258 | $ 204,094 | $ 99,454 | $ 93,104 | $ - |
| Capital contributions due from members | 361 | 361 | 361 | 361 | 361 | 351 |
| Total current assets | 711,181 | 519,619 | 204,455 | 99,815 | 93,465 | 351 |
| | | | | | | |
| Prepaid guaranteed royalties to PEII | 2,300,000 | 2,000,000 | 2,000,000 | 1,000,000 | 1,000,000 | 250,000 |
| Less: Accumulated amortization | (1,750,000) | (1,500,000) | (1,250,000) | (1,000,000) | (805,882) | (29,412) |
| | 550,000 | 500,000 | 750,000 | - | 194,118 | 220,588 |
| | | | | | | |
| Total assets | $ 1,261,181 | $ 1,019,619 | $ 954,455 | $ 99,815 | $ 287,583 | $ 220,939 |
| | | | | | | |
| **LIABILITIES AND MEMBERSHIP INTERESTS** | | | | | | |
| Current liabilities: | | | | | | |
| Royalty due LIB-MP Beverages, LLC | $ 24,701 | $ 2,311 | $ - | $ - | $ - | $ - |
| Accrued interest payable | 222,225 | 178,586 | 112,964 | 43,961 | 28,219 | 1,575 |
| Notes payable to Denney, Depuy, & Liberty* | 324,070 | 274,521 | 250,000 | 250,000 | 250,000 | 250,000 |
| Account (note) payable to CirTran Beverage Corp.* | 5,756,811 | 5,101,987 | 4,061,616 | 2,234,965 | 1,532,071 | |
| Total current liabilities | 6,327,807 | 5,557,405 | 4,424,580 | 2,528,926 | 1,810,290 | 251,575 |
| | | | | | | |
| Contractual commitments | - | - | - | - | - | |
| | | | | | | |
| Membership interests: | | | | | | |
| | | | | | | |
| Class A membership interests | | | | | | |
| Capital contributions | 1,950,361 | 750,361 | 750,361 | 750,361 | 750,361 | 351 |
| Allocated losses | (6,455,628) | (4,846,359) | (3,947,396) | (2,975,245) | (2,128,800) | (30,987) |
| Total Class A membership interests | (4,505,267) | (4,095,998) | (3,197,035) | (2,224,884) | (1,378,439) | (30,636) |
| | | | | | | |
| Class B membership interests | | | | | | |
| Capital contributions | | | | | | - |
| Allocated losses | (561,359) | (441,788) | (273,090) | (204,227) | (144,268) | - |
| Total Class B membership interests | (561,359) | (441,788) | (273,090) | (204,227) | (144,268) | |
| | | | | | | |
| Total membership interests | (5,066,626) | (4,537,786) | (3,470,125) | (2,429,111) | (1,522,707) | (30,636) |
| | | | | | | |
| Total liabilities and membership interests | $ 1,261,181 | $ 1,019,619 | $ 954,455 | $ 99,815 | $ 287,583 | $ 220,939 |

\* *Notes: As per the loan agreement (as amended) between Play Beverages, LLC and CirTran Beverage Corp., the accrued royalty receivable, appearing here as a separate amount, is actually netted against the balance owed to CirTran. After adding accrued interest payable, the net amount owed to CirTran is $5,756,811.*

*The September 30 amount for the promissory notes reflects the compounding of 2007's accrued interest.*



# metlawgroup

### Media, Entertainment and Technology Counsel

5959 West Century Blvd., 7th Floor · Los Angeles, CA 90045

Telephone: (310) 670-4656 · Facsimile: (310) 868-2656 · email: david.michail@michaillaw.com



**FAXED**

**OCT 2 1 2009**

# Fax



| **To:** | Play Beverages, LLC<br>Attn: Iehab Hawatmeh | **From:** | David F. Michail |
|---|---|---|---|
| **Fax:** | 801-963-5180 | **Pages:** | 3 to follow |
| **Phone:** | | **Date and Time:** | 10/21/2009 2:22 PM |
| **Re:** | 5th Notice of Default | **CC** | |

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

● **Comments:**

CONFIDENTIALITY NOTICE: The information contained in this facsimile message is intended only for the personal and confidential use of the addressee named above. The information is privileged, confidential and is exempt form disclosure. If the reader of this message is not the intended recipient, you are hereby notified that any review, dissemination or copy of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and return the original message to us at the address above via United States Postal Service. We will reimburse any reasonable costs you incur in notifying us and returning the message to us. Thank you.

TRANSMISSION VERIFICATION REPORT

```
                                    TIME  : 07/03/2008 04:40
                                    NAME  :
                                    FAX   :
                                    TEL   :
                                    SER.# : B9N966059
```

```
        DATE,TIME           07/03  04:40
        FAX NO./NAME        18019635180
        DURATION            00:00:35
        PAGE(S)             04
        RESULT              OK
        MODE                STANDARD
                            ECM
```

 **metlawgroup**

Media, Entertainment and Technology Counsel

5959 West Century Blvd., 7th Floor · Los Angeles, CA 90045

Telephone: (310) 670-4656 · Facsimile: (310) 868-2656 · email: david.michail@michaillaw.com

**FAXED**

**OCT 2 1 2009**



| To: | Paul H. Shaphren, Esq.<br>Callister Nebeker & McCullough | From: | David F. Michail |
|---|---|---|---|
| **Fax:** | (801) 746-8607 | **Pages:** | 3 to follow |
| **Phone:** | | **Date and Time:** | 10/21/2009 2:22 PM |
| **Re:** | Play Beverages, LLC<br>5th Notice of Default | **CC** | |

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

● **Comments:**

CONFIDENTIALITY NOTICE: The information contained in this facsimile message is intended only for the personal and confidential use of the addressee named above. The information is privileged, confidential and is exempt form disclosure. If the reader of this message is not the intended recipient, you are hereby notified that any review, dissemination or copy of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and return the original message to us at the address above via United States Postal Service. We will reimburse any reasonable costs you incur in notifying us and returning the message to us. Thank you.

TRANSMISSION VERIFICATION REPORT

```
TIME  : 07/03/2008 04:42
NAME  :
FAX   :
TEL   :
SER.# : B9N966059
```

```
DATE,TIME              07/03  04:42
FAX NO./NAME           18017468607
DURATION               00:00:39
PAGE(S)                04
RESULT                 OK
MODE                   STANDARD
                       ECM
```

# EXHIBIT 7



Media, Entertainment and Technology Counsel

www.metlawgroup.com

5959 West Century Blvd.
7th Floor
Los Angeles, CA 90045
Tel: +01 (310) 670-4656
Fax: +01 (310) 868-2656

<u>Via Facsimile:</u>          (801) 963-5180 AND (801) 746-8607
<u>With Original to Follow Via US Mail</u>

March 17, 2009

Play Beverages, LLC
Attn: Iehab Hawatmeh
c/o CirTran Beverage Corp.
4125 South 6000 West
West Valley City, Utah 84128

With copy to:

Paul H. Shaphren, Esq.
Callister Nebeker & McCullough
2180 South 1300 East, Suite 600
Salt Lake City, Utah 84106

**RE:**     **Demand For Springing Interest**
        **Sixth Notice of Default on Payment of Royalties**

Dear Mr. Hawatmeh:

          This letter is being copied to your legal counsel and is being made pursuant to
Section 9 (d) of the of the Royalty Agreement between Play Beverages, LLC ("PlayBev")
and LIB-MP Beverages, LLC ("LIB-MP") dated August 23, 2008 (the "Agreement").
Due to PlayBev's continuing uncured default you are required to immediately issue LIB-
MP 21,175 Class A Units to LIB-MP as its Springing Interest (as such term is defined
under the Agreement). This letter is intended as the second demand for such Springing
Interest as you have failed to timely cure the January 15, 2009, February 18 and 19, 2009
Default Notices.

          Further, this letter also constitutes notice LIB-MP's sixth notice of default under
Section 4 (a) of the Agreement because PlayBev has failed to pay our client Royalties as
follows:

          (a) on international revenues from August 2008 through February 2010; and
          (b) on domestic revenues from August 2008 through December 2009.

Finally, we reserve our claims and other allegations stated in our previous default notices, including, without limitation, allegations of fraud and conversion of assets by CBC, Citran and associated parties.

You have until Friday, March 19, 2010, 5:00 PM (PST), to comply with our demand to: (a) issue of the Class A Units as well as an updated cap table, (b) return and account for all funds transferred to CBC, and (c) pay all Royalty payments plus accrued interest and legal and audit fees.

You understand, of course, that nothing contained in this letter shall be deemed a waiver of any rights our client may possess, nor of any factual or legal position they may further allege, and hereby expressly reserve any such rights. Thank you for your attention to this matter.


Sincerely,

David Michail of
METLAWGROUP

CC: Paul Shaphren; Jeff Pollack
/enclosure.





**Media, Entertainment and Technology Counsel**

5959 West Century Blvd., 7th Floor · Los Angeles, CA 90045

Telephone: (310) 670-4656 · Facsimile: (310) 868-2656 · email: david.michail@michaillaw.com

**FAXED**

**MAR 1 8 2010**

# Fax

| To: | Play Beverages, LLC<br>ATTN: Iehab Hawatmeh | From: | David F. Michail |
|---|---|---|---|
| **Fax:** | 801-963-5180 | **Pages:** | 2 to follow |
| **Phone:** | | **Date and Time:** | 3/18/2010 10:17 AM |
| **Re:** | Demand For Springing Interest<br>6th Notice of Default | **CC** | |

☒ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

---

● **Comments:**

CONFIDENTIALITY NOTICE: The information contained in this facsimile message is intended only for the personal and confidential use of the addressee named above. The information is privileged, confidential and is exempt form disclosure. If the reader of this message is not the intended recipient, you are hereby notified that any review, dissemination or copy of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and return the original message to us at the address above via United States Postal Service. We will reimburse any reasonable costs you incur in notifying us and returning the message to us. Thank you.

TRANSMISSION VERIFICATION REPORT

TIME  : 03/18/2010 09:19
NAME  :
FAX   :
TEL   :
SER.# : B9N966059

| | |
|---|---|
| DATE,TIME | 03/18  09:18 |
| FAX NO./NAME | 18019635180 |
| DURATION | 00:00:27 |
| PAGE(S) | 03 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |



# metlawgroup

Media, Entertainment and Technology Counsel

5959 West Century Blvd., 7ᵗʰ Floor · Los Angeles, CA 90045
Telephone: (310) 670-4656 · Facsimile: (310) 868-2656 · email: david.michail@michaillaw.com

**FAXED**

MAR 1 8 2010

# Fax



| | | | |
|---|---|---|---|
| **To:** | Paul H. Shaphren, Esq. | **From:** | David F. Michail |
| **Fax:** | 801-746-8607 | **Pages:** | 2 to follow |
| **Phone:** | | **Date and Time:** | 3/18/2010 10:19 AM |
| **Re:** | Play Beverages, LLC, Demand For Springing Interest, 6ᵗʰ Notice of Default | **CC** | |

☒ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

● **Comments:**

CONFIDENTIALITY NOTICE: The information contained in this facsimile message is intended only for the personal and confidential use of the addressee named above. The information is privileged, confidential and is exempt form disclosure. If the reader of this message is not the intended recipient, you are hereby notified that any review, dissemination or copy of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and return the original message to us at the address above via United States Postal Service. We will reimburse any reasonable costs you incur in notifying us and returning the message to us. Thank you.

```
TRANSMISSION VERIFICATION REPORT
```

```
                                    TIME  : 03/18/2010 09:24
                                    NAME  :
                                    FAX   :
                                    TEL   :
                                    SER.# : B9N966059
```

```
        DATE,TIME              03/18  09:22
        FAX NO./NAME           18017468607
        DURATION               00:00:30
        PAGE(S)                03
        RESULT                 OK
        MODE                   STANDARD
                               ECM
```

# EXHIBIT 8

1   DREIER STEIN KAHAN
2       BROWNE WOODS GEORGE LLP
    Peter W. Ross (State Bar No. 109741)
    Gene Williams (State Bar No. 211390)
3   Mansi Shah (State Bar No. 234984)
    2121 Avenue of the Stars, 24th Fl.
4   Los Angeles, CA 90067
    Telephone: 310.274.7100
5   Facsimile: 310.275.5697

6   Attorneys for Plaintiff
    JIMMY ESEBAG

7

**FILED**
LOS ANGELES SUPERIOR COURT

AUG 1 2 2008

JOHN A. CLARKE, CLERK

BY SHAUNYA WESLEY, DEPUTY

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                       COUNTY OF LOS ANGELES

10

11                                          BC396162

12  JIMMY ESEBAG,                   CASE NO.
    an individual,
13
                Plaintiff,          COMPLAINT FOR:
14
        vs.                         (1) BREACH OF CONTRACT;
15                                  (2) FRAUD; AND
    CIRTRAN CORPORATION, a Utah     (3) DEFAMATION
16  corporation; FADI NORA, an individual;
    and DOES 1 through 10, inclusive,
17
                Defendants.
18

19                          **VIA FAX**

20

21

22

23

24

25

26

27

28

207917_1.DOC

                        COMPLAINT

*(handwritten left margin)* Dept 13 [signature]

*(vertical left margin)* DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP

*(vertical right margin)* CIT/CASE: BC396162 LEA/DEFH: RECEIPT #: CCH846592003P DATE PAID: 08/12/08 01:35:56 PM PAYMENT: $320.00 RECEIVED: CHECK: CASH: CHANGE: CARD: 320.00 0310

1    Plaintiff Jimmy Esebag ("Plaintiff" or "Esebag") alleges as follows:

2    **PARTIES**

3    1.    Plaintiff Esebag is an individual residing in the County of Los Angeles.

4    2.    Defendant CirTran Corporation ("CirTran") is a Utah Corporation with its

5    principal sales, marketing and business development office located at 9301 Wilshire

6    Boulevard, Suite 410, Beverly Hills, California 90210.

7.    3.    Plaintiff is informed and believes that Defendant Fadi Nora ("Nora") is an

8    individual residing in Mission Viejo, California and doing business in Beverly Hills,

9    California. Plaintiff is further informed and believes that Defendant Nora is a principal,

10    owner, managing agent and director of CirTran.

11    4.    Defendants Does 1 through 10, inclusive, are sued herein under fictitious

12    names because their true names and capacities are presently unknown to Plaintiff.

13    Once their true names and capacities are ascertained, Plaintiff will amend this complaint

14    by inserting said true names and capacities and any other necessary allegations.

15    Plaintiff believes, and based thereon alleges, that Defendant Does 1 through 10,

16    inclusive, and each of them, are legally responsible in some manner for the acts and

17    omissions alleged in this complaint, and their conduct proximately caused the damage

18    alleged herein.

19    5.    Plaintiff is informed and believes and thereon alleges that at all times

20    mentioned herein, each of the Defendants was the agent and representative of the other

21    Defendants, acting within the purpose and scope of said agency and representation, and

22    that each of the Defendants authorized and ratified the conduct herein alleged of each of

23    the other Defendants.

24    6.    Plaintiff is informed and believes and thereon alleges that at all times

25    mentioned herein, there existed a unity of interest between Defendants, and each of

26    them, such that any individuality and separateness between Defendants ceased, and

27    each of the Defendants is the alter ego of each of the other Defendants, and adherence

28

207917_1.DOC

-2-

COMPLAINT

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

1  to the fiction of the separate existence of the Defendants would permit an abuse of the

2  corporate privilege, sanction fraud and promote injustice.

3  <u>**SUMMARY OF FACTS**</u>

4       7.    Plaintiff is informed and believes that at all relevant times third party Play

5  Beverages, LLC ("Play Beverages") was and is in the business of producing, marketing

6  and selling "energy drinks".

7       8.    Plaintiff is informed and believes that in June 2008, Defendant CirTran

8  beneficially owned a majority interest in Play Beverages. Defendants had invested over

9  $6,000,000 in the company. Plaintiff is further informed and believes that two

10  individuals, Jeff Pollack ("Pollack") and Michael Liberty ("Liberty"), controlled a 21.175%

11  interest in Play Beverages. Pollack was a manager of Play Beverages. Another third

12  party, American Sales & Merchandising, LLC ("American Sales"), a company controlled

13  by Liberty, had an exclusive distribution agreement with Play Beverages for all its

14  territories.

15       9.    By June 2008, certain disputes and disagreements had arisen between

16  Nora and CirTran on the one hand and Pollack and Liberty on the other. As a result,

17  Defendants, Pollack and Liberty could no longer cooperate to run Play Beverages to

18  their mutual benefit. The deadlock threatened to destroy the business. Defendants

19  were faced with the potential loss of their $6,000,000 investment. Defendants greatly

20  desired to eliminate the ownership interest of Pollack and Liberty in Play Beverages.

21       10.    In or about early June 2006, Nora, on behalf of himself and Defendants,

22  approached Plaintiff in person at his office. Nora requested Plaintiff's assistance in

23  facilitating a deal by which CirTran would eliminate the interests held by Pollack and

24  Liberty. Specifically, Nora told Plaintiff that defendants desired that Pollack and Liberty

25  exchange their beneficial 21.175% ownership interest in Play Beverages for a 7%

26  royalty. In addition, Defendants wanted American Sales' exclusive distributorship

27  agreement cancelled. Nora proposed and promised that if Plaintiff could broker the

28

207917_1.DOC

-3-

COMPLAINT

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

1    desired deal.  Nora and CirTran would pay Plaintiff a success fee of $1,000,000.  Plaintiff

2    agreed to the proposal (the "Oral Agreement").

3        11.    In reliance upon Defendants' promise and the Oral Agreement, Plaintiff

4    took steps to broker the desired deal, including arranging and attending meetings

5    between the parties and facilitating the discussions in manifold ways.  Plaintiff was

6    successful in his efforts.  All parties agreed to the desired arrangement.

7        12.    Upon completion of his duties under the Oral Agreement, Plaintiff sought

8    the agreed upon payment from Defendants.  Defendants paid Plaintiff approximately

9    $55,000 in cash and checks.  Defendants promised Plaintiff that additional payments

10   would be made on a weekly basis until their obligations under the Oral Agreement were

11   satisfied.  In addition, Defendant Nora, on behalf of himself and Defendants, authorized

12   payments to be taken by Plaintiff against Nora's American Express credit card.  Several

13   such payments were taken in the total sum of $65,000.

14       13.    Shortly thereafter, Defendants repudiated their obligation to pay any further

15   sums under the Oral Agreement, leaving an unpaid balance in excess of $880,000.

16       14.    Further, Plaintiff is informed and believes and thereon alleges that Nora

17   falsely reported to American Express that the charges against Nora's credit card -- taken

18   with his authorization in payment of further sums due under the Oral Agreement -- had

19   been taken fraudulently.  As a result of this false report, Plaintiff has suffered

20   embarrassment and emotional distress and injury to his reputation.

21       **FIRST CAUSE OF ACTION – BREACH OF CONTRACT**

22               **(Against All Defendants)**

23       15.    Plaintiff incorporates by this reference each of the allegations contained in

24   paragraphs 1 through 14 above as set forth in full.

25       16.    In or about June 2008, Plaintiff and Defendants entered into an oral

26   contract.  The terms of the Oral Agreement were that Plaintiff would endeavor to broker

27   a deal between Defendants, on the one hand, and Pollack and Liberty, on the other.

28   Under the deal, Pollack and Liberty would relinquish their beneficial ownership interests

207917_1.DOC                              -4-

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

1   in Play Beverages in exchange for a 7% royalty on sales. American Sales would cancel

2   its exclusive distributorship agreement. If Plaintiff were successful in brokering a deal on

3   the desired terms, then Defendants would pay Plaintiff $1,000,000.

4       17.   Plaintiff successfully brokered the deal based upon all of the criteria set

5   forth in the Oral Agreement and fully performed all actions required of him under the Oral

6   Agreement.

7       18.   Defendants breached the Oral Agreement by refusing to pay Plaintiff his

8   success fee of $1,000,000. To date, Defendants have paid Plaintiff only $120,000 of his

9   $1,000,000 fee.

10      19.   As a direct and proximate result of Defendants' acts, Plaintiff has been

11   damaged in the sum of $880,000 plus interest.

### SECOND CAUSE OF ACTION – FRAUD

### (Against All Defendants)

14      20.   Plaintiff incorporates by this reference each of the allegations contained in

15   paragraphs 1 through 19 above as set forth in full.

16      21.   In or about early June 2006, Defendant Nora, acting on behalf of all

17   Defendants, promised that Defendants would pay Plaintiff $1,000,000, should he

18   undertake to, and successfully broker, the desired deal between Defendants and

19   CirTran, on the one hand, and Pollack and Liberty, on the other hand, as set forth in

20   paragraph 10 above.

21      22.   At the time Defendants made their promise, they had no intention of

22   performing it.

23      23.   Defendants made their promise for the purpose of inducing Plaintiff to act

24   in reliance upon it and broker the desired deal with Pollack and Liberty.

25      24.   Plaintiff did not know and had no reason to suspect that the promise was

26   false. Acting in reliance upon the promise, Plaintiff successfully brokered the desired

27   deal with Pollack and Liberty. If not for the promise, Plaintiff would not have undertaken

28   to broker, and would not have brokered, such a deal.

207917_1.DOC          -5-

DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP

25.     Defendants in fact have failed to perform their promise.  They have not paid the $1,000,000 success fee, or any part of it, except for $120,000.

26.     As a result of Defendants' acts, as alleged herein, Plaintiff has been damaged in a sum which is not presently known, but which is in excess of $1,000,000. When the full amount of said damages is known, Plaintiff will seek leave of Court to amend this Complaint to reflect these damages.

27.     Plaintiff is informed and believes and thereon alleges that Defendants willfully engaged in the conduct hereinabove alleged with malice, fraud and oppression, without excuse or justification, and with the specific intent to injure Plaintiff.  Plaintiff is therefore entitled to an award of punitive damages against Defendants and each of them in a sum to be proven at trial.

## THIRD CAUSE OF ACTION – DEFAMATION

### (Against Defendant Nora)

28.     Plaintiff incorporates by this reference each of the allegations contained in paragraphs 1 through 27 above as set forth in full.

29.     Plaintiff is informed and believes that Defendant Nora made a statement to the Fraud Department at American Express credit card that Plaintiff fraudulently used Nora's credit card to make unauthorized transactions.

30.     Plaintiff is further informed and believes that American Express understood these statements to mean that Plaintiff has committed the crime of credit card fraud, causing American Express to investigate Plaintiff with respect to this alleged crime.

31.     Plaintiff is informed and believes that Defendant Nora knew these statements to American Express were false, because Defendant Nora explicitly authorized the charges made for the benefit of Plaintiff.

32.     As a result of Defendant Nora's acts, Plaintiff has suffered harm to his reputation and shame, mortification and hurt feelings.

33.     Plaintiff is informed and believes and thereon alleges that Defendants willfully engaged in the conduct hereinabove alleged with malice, fraud and oppression,

207917_1.DOC                                    -6-

COMPLAINT

DREIER STEIN KAHAN
BROWNE WOODS GEORGE LLP

1    without excuse or justification, and with the specific intent to injure Plaintiff. Plaintiff is

2    therefore entitled to an award of punitive damages against Defendant Nora in a sum to

3    be proven at trial.

4                                          **PRAYER**

5            Wherefore, Plaintiff prays that this Court enter judgment in Plaintiff's favor and

6    against Defendants as follows:

7            1.      For compensatory, consequential and incidental damages in an amount to

8    be proven at trial in excess of $2,000,000;

9            2.      For punitive damages according to proof;

10           3.      For pre- and post-judgment interest; and

11           4.      For such other relief as the Court may deem just and proper.

12   DATED: August 11, 2008                    DREIER STEIN KAHAN
                                               BROWNE WOODS GEORGE LLP
13

14

15                                   By
                                         PETER W. ROSS
16                                       Attorneys for Plaintiff
                                         JIMMY ESEBAG
17

18

19

20

21

22

23

24

25

26

27

28
     207917_1.DOC                          -7-
                                         COMPLAINT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Valerie Baker Fairbank and the assigned discovery Magistrate Judge is Jacqueline Chooljian.

The case number on all documents filed with the Court should read as follows:

## CV10- 2184 VBF (JCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

============================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIB-MP BEVERAGE, LLC, a California limited liability company <br><br> PLAINTIFF(S) | **CASE NUMBER** <br><br> **CV10 2184 VBF** (JCx) |
| v. <br> PLAY BEVERAGES, LLC, a Delaware limited liability company; CIRTRAN BEVERAGE CORPORATION, a Utah Corporation; CIRTRAN CORPORATION, a Utah Corporation; IEHAB HAWATMEH, an Individual; FADI NORA, an Individual, and DOES 1 through 10, inclusive, <br> DEFENDANT(S). | **SUMMONS** |

TO:   DEFENDANT(S): _____

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached [X] complaint [ ] _____ amended complaint [ ] counterclaim [ ] cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Steven E. Young, Esq._____, whose address is _3415 S. Sepulveda Blvd., Ste. 1200, Los Angeles, CA 90034_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___MAR 2 5 2010___

By: ___**CHRISTOPHER POWERS**___

Deputy Clerk

(Seal of the Court)

SEAL

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

| **I (a) PLAINTIFFS**   (Check box if you are representing yourself ☐ ) | **DEFENDANTS** |
|---|---|
| LIB-MP BEVERAGE, LLC, a California limited liability company | PLAY BEVERAGES, LLC; CIRTRAN BEVERAGE CORPORATION; CIRTRAN CORPORATION; IEHAB HAWATMEH; FADI NORA; and DOES 1 through 10, inclusive |

| **(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | **Attorneys (If Known)** |
|---|---|
| STEVEN E. YOUNG, ESQ.  (SBN 63278)<br>ROBERT J. GIRARD II, ESQ.  (SBN 216949)<br>FREEMAN, FREEMAN & SMILEY, LLP<br>3415 S. Sepulveda Blvd., SuiTE 1200<br>Los Angeles, CA 90034<br>310-255-6100 tel. | |

**II.   BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III.   CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV.   ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V.   REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ less than $100,000   According to proof but not

**VI.   CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

FRAUD, BREACH OF CONTRACT, SPECIFIC PERFORMANCE, DECLARATORY RELIEF, ACCOUNTING, IMPOSITION OF CONSTRUCTIVE TRUST AND RIGHT OF RECEIVER

**VII.   NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☒ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety/Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS - Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number: _____

CV10   2184

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a).   IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [X] No ☐ Yes
If yes, list case number(s):

**VIII(b).   RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [X] No ☐ Yes
If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐   A.  Arise from the same or closely related transactions, happenings, or events; or
                              ☐   B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                              ☐   C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                              ☐   D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX.  VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | PLAY BEVERAGES, LLC, DE;  CIRTRAN BEVERAGE CORP., UT;  CIRTRAN CORP., UT;  IEHAB HAWATMEH, UT;  FADI NORA, ORANGE COUNTY, CA |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
        Note: **In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):**  _____  Date MARCH 25, 2010
                                               STEVEN E. YOUNG, ESQ.  (SBN 63278)

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |